581 So.2d 1288 (1991)
STATE of Florida, Appellant/Cross-Appellee,
v.
Mario Albo LARA, Appellee/Cross-Appellant.
No. 73888.
Supreme Court of Florida.
May 9, 1991.
Rehearing Denied July 9, 1991.
Robert A. Butterworth, Atty. Gen. and Ralph Barreira, Asst. Atty. Gen., Miami, for appellant/cross-appellee.
Larry Helm Spalding, Capital Collateral Representative, Billy H. Nolas, Chief Asst. CCR, Julie D. Naylor, Sp. Asst. CCR, and Thomas H. Dunn, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for appellee/cross-appellant.
PER CURIAM.
The state appeals from an order of the trial judge granting Lara relief in a post-conviction proceeding under rule 3.850, Florida Rules of Criminal Procedure, by vacating Lara's death sentence and directing a new sentencing hearing.
Mario Albo Lara, the appellee and movant below, cross appeals the trial court's denial of postconviction relief in the guilt phase of his trial. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the trial court's order in all respects.
Lara was convicted of the first-degree murder of Grisel Fumero and the second-degree murder and rape of his girlfriend, Olga Elviro. These murders were precipitated by the fact that Lara was awaiting trial on charges of robbery and voluntary and involuntary sexual battery of Fumero's thirteen-year-old sister, and Fumero was expected to testify against Lara at trial. Lara's conviction and sentence of death were affirmed by this Court on direct appeal in Lara v. State, 464 So.2d 1173 (Fla. 1985). A more detailed statement of the facts and circumstances of this incident is contained in that opinion. Lara filed a motion to vacate judgment and sentence pursuant to Florida Rule of Criminal Procedure 3.850 on numerous grounds but principally that his counsel was ineffective in both the guilt and penalty phases of his trial.
The trial judge who conducted the original trial held a four-day evidentiary hearing on the motion. In granting a new sentencing hearing, the trial judge noted *1289 that the jury's recommendation of the death penalty was by a vote of eight to four. The judge articulated her reasons for granting relief as follows:
[T]he court concludes that, because the defendant's trial counsel failed to present significant and compelling mitigating evidence at the penalty phase of the original trial, the defendant is entitled to a new hearing before the jury and court on the penalty to be imposed. The court finds that had there been presented to the jury for its consideration the evidence of the defendant's brutal treatment by his father, the defendant's bizarre behavior signalling serious mental disorientation, and prior hospitalization in Cuba for mental illness, there is a reasonable probability that the jury's recommendation and therefore the sentence imposed by the Court would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Combs v. State, 525 So.2d 853 (Fla. 1988); Tedder v. State, 322 So.2d 908 (Fla. 1975).
At the evidentiary hearing, the defendant's trial attorney, Stuart Adelstein, testified  and the court finds  that he was overwhelmed and panicked in handling his first capital case, spent ninety percent of his time working on the guiltinnocence phase of the trial, did not investigate in any detail the defendant's background, and did not properly utilize expert witnesses regarding defendant's psychological state. In short, the court finds that Mr. Adelstein virtually ignored the penalty phase of the trial.
At the penalty phase of the trial, Carmelina Lara, the defendant's aunt, was the sole witness called by the defendant. Her entire testimony, including cross-examination by the State, can be found in seven pages in the transcript. See Trial Transcript 2088-2095. The aunt cursorily recounted that the defendant's father treated him "very bad," beat him a lot, left him unconscious on the floor, and thereby caused the defendant to be hospitalized. In contrast, during these Rule 3.850 proceedings, the detailed testimony of eight "background" witnesses lasted several days and was, as well, qualitatively different from the testimony presented at the penalty phase of the original trial. For example, the testimony evoked vivid images of the defendant eating dirt because his father wouldn't feed him and the other children; being punished by his father by being tied by his feet and hung upside down over a well; being left in the sugar cane fields alone for days; getting drunk beginning at the age of 8 or 9; hearing the voice of "Bermudez" (the devil); and hitting his head against the wall at school.
Likewise, although at trial defense counsel failed to present testimony of mental health experts regarding the defendant's diminished mental capacity (no such witnesses testified before the jury, and only one, Dr. Cava, testified at the original sentencing hearing before the Court), during the present Rule 3.850 proceedings, such experts testified convincingly that the defendant had an extreme emotional disturbance and an impaired capacity to conform his conduct to the requirements of the law. Although the Court finds that this expert testimony is not sufficient to grant relief on the ground that the defendant was incompetent to stand trial or had a valid insanity defense, it is clear that the defendant's trial counsel should have investigated and prepared these areas for presentation to the jury as evidence in mitigation at the penalty phase of the trial, State v. Michael, 530 So.2d 929 (Fla. 1988); Middleton v. Dugger, 849 F.2d 491 (11th Cir.1988), and that, had such evidence been presented, the jury might well have recommended a penalty other than death. Clearly defense counsel's actions were not based on any tactical decisions or strategy, despite the State's contrary suggestion.
The trial court also rejected Lara's challenges based on ineffective assistance of counsel in the guilt phase, holding that Lara's claims that his counsel was ineffective and the trial was fundamentally unfair were without merit.
*1290 The state concedes that the background and mental health testimony presented at the 3.850 hearing was quantitatively and qualitatively superior to that presented by defense counsel at the penalty phase. The state also concedes that had this evidence been presented, Lara's sentence may have been affected. The state argues, however, that it was Lara and his family who prevented counsel from developing and presenting the evidence at trial. Since the failure to present this mitigating evidence is based on the defendant's lack of cooperation and witnesses' reluctance to cooperate, the state concludes that counsel should not be held to be ineffective. That argument conflicts directly with the trial court's express findings that defense counsel "did not investigate in any detail the defendant's background and did not properly utilize expert witnesses regarding defendant's psychological state" and that "Mr. Adelstein virtually ignored the penalty phase of the trial." We reject the state's argument and find that this record clearly supports the trial court's order.
In his cross-appeal, Lara raises ten claims: (1) that he was denied effective assistance of counsel in the guilt phase; (2) that he was denied a fair trial when the trial court allowed the jurors to return home overnight after deliberations had begun; (3) that counsel was ineffective for failing to request a change of venue; (4) that counsel conducted ineffective voir dire; (5) that he was prejudiced by a denial of a continuance; (6) that counsel was ineffective for failing to adequately investigate, develop, prepare, and present mental health defenses at trial; (7) that the trial court placed an unreasonable and unconstitutional restriction on trial counsel in his closing argument; (8) that counsel was ineffective for failing to litigate the Williams[1] rule issue; (9) that counsel was ineffective for failing to investigate all possible grounds for the motion to suppress; and (10) that counsel was ineffective for failing to ask for curative instructions or a mistrial during the state's closing argument.
We find that the trial court correctly denied relief on these claims and properly applied the principles of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in denying relief on the ineffective-assistance-of-counsel claims. Accordingly, we affirm the trial court's order in all respects and remand for a new penalty phase proceeding before a new jury, which we direct be held within ninety days from the time this opinion becomes final.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).