654 So.2d 107 (1995)
Paul Christopher HILDWIN, Jr., Petitioner,
v.
Richard L. Dugger, Respondent.
Paul Christopher HILDWIN, Jr., Appellant,
v.
STATE of Florida, Appellee.
Nos. 76145, 82321.
Supreme Court of Florida.
January 19, 1995.
Rehearing Denied May 11, 1995.
*108 Michael J. Minerva, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR and Gail E. Anderson, Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Dan Haun and Kenneth S. Nunnelley, Asst. Attys. Gen., Daytona Beach, for respondent/appellee.
PER CURIAM.
Paul Christopher Hildwin, Jr., a prisoner under sentence of death, appeals the trial court's denial of his motion pursuant to Florida Rule of Criminal Procedure 3.850 and also petitions this Court for a writ of habeas corpus. We have jurisdiction pursuant to article V, sections 3(b)(1) and (9) of the Florida Constitution.
Hildwin was convicted of the strangulation murder of Vronzettie Cox. The jury recommended death by a unanimous vote and the trial judge followed that recommendation. In his order imposing the death sentence, the trial judge found nothing in mitigation and four aggravating circumstances: (1) Hildwin had prior convictions for violent felonies;[1] (2) Hildwin was under a sentence of imprisonment at the time of the murder;[2] (3) Hildwin murdered Cox for pecuniary gain;[3] and (4) Cox's murder was especially heinous, atrocious, or cruel.[4] Hildwin's conviction and sentence of death were affirmed by this Court on direct appeal in Hildwin v. State, 531 So.2d 124 (Fla. 1988). A more detailed description of Cox's murder is contained in that opinion. The United States Supreme Court granted Hildwin's petition for a writ of certiorari and affirmed the judgment of this Court. Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989). Thereafter, Hildwin filed a petition for habeas corpus and a 3.850 motion, raising thirteen claims. The trial court denied relief on claims IV through XIII and ordered an evidentiary hearing on claims I, II, and III. After an evidentiary hearing, the trial court denied relief on claims I, II, and III.

3.850 Appeal
Hildwin raises eleven claims in his appeal from the denial of his 3.850 motion: (I) the State withheld exculpatory evidence or, alternatively, trial counsel was ineffective for failing to discover that evidence; (II) trial counsel was ineffective for failing to investigate and present certain mitigating evidence; (III) the State failed to comply with a public records request of postconviction counsel thereby entitling Hildwin to a new evidentiary hearing; (IV) trial counsel was ineffective during the guilt phase of trial; (V) intense security measures deprived Hildwin of a fair trial and sentence, and trial counsel was ineffective for failing to pursue this claim; (VI) the trial court's instructions on third-degree murder and manslaughter were constitutionally impaired, and trial counsel was ineffective for failing to object to these instructions; (VII) nonstatutory aggravators were introduced during the penalty phase, and trial counsel was ineffective for failing to object to the introduction and consideration of these nonstatutory aggravators; (VIII) the penalty phase jury instructions impermissibly shifted the burden to Hildwin to prove that life was the appropriate sentence; (IX) the penalty phase jury instructions and arguments impermissibly diluted the jury's sense of responsibility *109 for sentencing, and trial counsel was ineffective for failing to pursue this claim; (X) the "heinous, atrocious, or cruel" aggravating factor instruction violated Espinosa,[5] and trial counsel was ineffective for failing to adequately pursue this claim; and (XI) Hildwin's trial and sentence were fraught with procedural and substantive errors which, taken as a whole, cannot be deemed harmless.

Guilt Phase
We first address the claims Hildwin raises alleging error in the guilt phase of his trial. Only Hildwin's first claim merits discussion. Hildwin argues that the State withheld exculpatory evidence in derogation of Brady.[6] Alternatively, Hildwin contends that his trial counsel was ineffective for failing to discover that evidence.
In order to establish a Brady violation, Hildwin would have to prove: (1) that the State possessed evidence favorable to him; (2) that he did not possess the favorable evidence nor could he obtain it with any reasonable diligence; (3) that the State suppressed the favorable evidence; and (4) that had the evidence been disclosed to Hildwin, a reasonable probability exists that the outcome of the proceedings would have been different. See Hegwood v. State, 575 So.2d 170, 172 (Fla. 1991). In denying Hildwin's Brady claim, the trial court concluded:
There is no indication, based on the evidence presented at the 3.850 hearing, that any evidence was withheld from the Defendant; and certainly no evidence was presented at the 3.850 hearing that any evidence Defense counsel claimed he did not receive and did not otherwise have access to, would have with "reasonable probability" changed the result.
We agree. In fact, five witnesses testified that the State's entire file was made available to defense counsel. The record simply does not support Hildwin's Brady claim.
Hildwin's Brady claim is no more persuasive recast as an ineffective assistance of counsel claim. In order to prevail on his ineffective assistance of counsel claim, Hildwin must demonstrate that his trial counsel's performance was deficient and "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). There was overwhelming evidence of Hildwin's guilt presented at the trial. Therefore, assuming without deciding that trial counsel's performance was deficient for failing to discover certain exculpatory evidence, we do not believe Hildwin has demonstrated a reasonable probability that the outcome of the trial proceedings would have been different had this evidence been presented.
As to Hildwin's other challenges to his conviction, we find claims III, IV, and VI to be without merit. To the extent that we addressed claim V on direct appeal, it is procedurally barred and we find it to be otherwise without merit. Finally, we find claim XI to be procedurally barred because it is an issue which could have been, or should have been, raised on direct appeal.

Penalty Phase
In claim II, Hildwin contends that his trial counsel was ineffective during the penalty phase of trial in failing to investigate and present certain mitigating evidence. In this context, Hildwin must demonstrate that counsel's performance was deficient and that counsel's deficient performance affected the outcome of the sentencing proceedings. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Stated otherwise, Hildwin must demonstrate that but for counsel's errors he would have probably received a life sentence.
The trial court found, and we conclude, that trial counsel's performance at sentencing was deficient. Trial counsel's sentencing investigation was woefully inadequate. As a consequence, trial counsel failed to unearth a large amount of mitigating evidence which could have been presented at sentencing. For example, trial counsel was not even aware of Hildwin's psychiatric hospitalizations and suicide attempts.
*110 At his 3.850 hearing, Hildwin presented an abundance of mitigating evidence which his trial counsel could have presented at sentencing.[7] Hildwin presented two mental health experts.[8] Both experts testified that they found the existence of two statutory mitigators: (1) that Hildwin murdered Cox while under the influence of extreme mental or emotional disturbance;[9] and (2) Hildwin's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.[10] Both experts also recognized a number of nonstatutory mitigators:[11] (1) Hildwin was abused and neglected as a child;[12] (2) Hildwin had a history of substance abuse;[13] (3) Hildwin showed signs of organic brain damage;[14] and (4) Hildwin performs well in a structured environment such as prison.[15] In addition, Hildwin presented substantial lay testimony regarding mitigation which was not presented at sentencing.
Our task is to determine whether Hildwin was prejudiced by his counsel's failure to present this evidence at sentencing. The trial court noted that its "initial and most visceral reaction on this second `prejudice' prong of the STRICKLAND test is that the sentencing phase was not a reliable adversarial testing process." However, the trial court concluded that it could not "find as a matter of law, a reasonable probability that the outcome of the case would have been different; that is, had such mitigating evidence been presented that six (6) jurors would have changed their votes." In so concluding, the trial court requested "that the reviewing Court give particular scrutiny" to its conclusion that Hildwin was not deprived of the effective assistance of counsel at the penalty phase of his trial.
Hildwin argues that the trial court erred in concluding that he was not prejudiced by his counsel's failure to investigate and present additional mitigating evidence at sentencing. We agree. In view of the substantial mitigating evidence presented at the 3.850 hearing, including the testimony of two mental health experts, we find that counsel's errors deprived Hildwin of a reliable penalty phase proceeding. Because we conclude that Hildwin was prejudiced by the ineffective assistance of trial counsel at the penalty phase with respect to the presentation of mitigating evidence, we need not address claims VII, VIII, IX or X of his 3.850 motion which also pertain to the penalty phase of his trial. Additionally, we need not consider claims V and XI insofar as they constitute a challenge to Hildwin's sentence.

Petition for Writ of Habeas Corpus
Hildwin raises six claims in his supplemental brief in support of his petition for writ of habeas corpus: (I) impermissible nonstatutory aggravating circumstances were considered  raised as claim VII in Hildwin's 3.850 appeal; (II) the "heinous, atrocious or cruel" and "pecuniary gain" aggravating circumstances as set forth in section 921.141, Florida Statutes, are unconstitutionally vague  the challenge to the "heinous, atrocious or cruel" aggravator raised as claim X in Hildwin's 3.850 appeal; (III) the instructions on third-degree murder and manslaughter were *111 constitutionally deficient  raised as claim VI in Hildwin's 3.850 appeal; (IV) intense security measures deprived Hildwin of a fair trial and sentence  raised as claim V in Hildwin's 3.850 appeal; (V) the penalty phase jury instructions impermissibly shifted the burden to Hildwin to prove that life was the appropriate sentence  raised as claim VIII in Hildwin's 3.850 appeal; and (VI) the jury's sense of responsibility for sentencing was impermissibly diluted  raised as claim IX in Hildwin's 3.850 appeal.[16] Hildwin also contends that appellate counsel was ineffective for failing to pursue each of these claims.
Because we conclude that Hildwin was prejudiced by the ineffective assistance of his trial counsel at the penalty phase, claims I, II, V and VI of Hildwin's petition for writ of habeas corpus need not be addressed. Additionally, we need not consider claim IV insofar as it represents an attack on Hildwin's sentence. Hildwin raised claims III and IV in his 3.850 appeal. Habeas corpus is not to be used for additional appeals of issues that could have been, should have been, or were raised in a 3.850 motion. See Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla. 1987). As we recognized in disposing of Hildwin's 3.850 claims, claims III and IV are without merit. Hildwin's appellate counsel cannot be deemed ineffective for failing to raise meritless claims. See Suarez v. Dugger, 527 So.2d 190, 193 (Fla. 1988).

Conclusion
We affirm the denial of Hildwin's rule 3.850 motion with respect to his conviction. As to Hildwin's sentence, we vacate and remand for a new sentencing proceeding before a jury. We also deny Hildwin's petition for writ of habeas corpus.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which SHAW and KOGAN, JJ., concur.
ANSTEAD, Justice, specially concurring.
I fully concur in the majority opinion and write separately to note a matter of special concern set out in the trial court's order. Initially, I note that the trial court here, despite our ultimate disagreement on the need for a new penalty phase proceeding, appears to have done an extremely thorough and comprehensive job in handling a most difficult and complicated matter.
The court was also commendably candid in trying to resolve the issue of the prejudicial effect of counsel's substandard performance. In his order denying relief, Judge Tombrink squarely confronts the issue of whether counsel's patently inadequate performance during the sentencing phase made any difference. First, the court, after detailed review of the evidence of counsel's performance, concluded that counsel "acted measurably below the standard established for reasonably competent counsel at the penalty phase." Then, on the issue of prejudice, the judge noted that he had substantial knowledge of the "sentencing pre-dispositions of the presiding judge" and stated:
There is no doubt in this Court's mind that had there been any legal basis for providing the death penalty in this case that the death penalty likely would have been ordered. This Court mentions this not to suggest in any way that there is anything improper about that alleged pre-disposition by the presiding judge, but simply to state that this is a well known fact to all that have experience with practicing before this former judge who presided over this murder trial.
In other words, a substantial basis for the trial judge's denial of relief here was his candid belief that the sentencing judge was so predisposed to imposing death that there was virtually nothing that counsel could have done to change the outcome. While we have based our reversal on a proper standard for *112 evaluating the prejudicial effect of counsel's inadequacy, this observation by Judge Tombrink alone undermines the integrity of the prior sentencing proceeding.
We should all pause to consider the magnitude of this disclosure. When trial judges take an oath to uphold the law, that includes taking on the responsibility for sentencing in capital cases, including the potential imposition of the death penalty in those cases where the circumstances mandate its application in accord with legislative policy and judicial restraints. However, such a decision is controlled by the circumstances of each particular case, and cannot be made until those circumstances are developed through the detailed sentencing process required in capital cases. The constitutional validity of the death sentence rests on a rigid and good faith adherence to this process. Confidence in the outcome of such a process is severely undermined if the sentencing judge is already biased in favor of imposing the death penalty where there is "any" basis for doing so. Such a mindset is the very antithesis of the proper posture of a judge in any sentencing proceeding.
SHAW and KOGAN, JJ., concur.
NOTES
[1] § 921.141(5)(b), Fla. Stat. (1985).
[2] § 921.141(5)(a), Fla. Stat. (1985).
[3] § 921.141(5)(f), Fla. Stat. (1985).
[4] § 921.141(5)(h), Fla. Stat. (1985).
[5] Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992).
[6] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[7] We recognize that Hildwin's trial counsel did present some evidence in mitigation at sentencing. The defense called five lay witnesses  including Hildwin's father, a couple who periodically cared for Hildwin when he was abandoned by his father, a friend of Hildwin, and Hildwin himself. The testimony of these witnesses was quite limited. In short, they revealed that Hildwin's mother died before he was three, that his father abandoned him on several occasions, that Hildwin had a substance abuse problem, and that Hildwin was a pleasant child and is a nice person.
[8] We note that the trial court "found the testimony of the mental health experts offered at the 3.850 hearing most persuasive and convincing."
[9] § 921.141(6)(b), Fla. Stat. (1985).
[10] § 921.141(6)(f), Fla. Stat. (1985).
[11] This list is merely illustrative, not exhaustive.
[12] See Campbell v. State, 571 So.2d 415, 419 n. 4 (Fla. 1990).
[13] See Carter v. State, 560 So.2d 1166, 1168 (Fla. 1990).
[14] Id.
[15] See Valle v. State, 502 So.2d 1225, 1226 (Fla. 1987).
[16] We note, parenthetically, that Hildwin filed his original petition for writ of habeas corpus in 1990. Therein, Hildwin raised one claim  that the penalty phase jury instructions impermissibly shifted the burden to Hildwin to prove that life was the appropriate sentence. That claim is reasserted as claim V in his supplemental brief.