675 So.2d 567 (1996)
James Franklin ROSE, Appellant,
v.
STATE of Florida, Appellee.
No. 83623.
Supreme Court of Florida.
March 7, 1996.
Rehearings Denied June 18, 1996.
*568 Gail E. Anderson and Daren L. Shippy, Assistant Capital Collateral Representatives, Office of the Capital Collateral Representative, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Sara D. Baggett, Assistant Attorney General, West Palm Beach, for Appellee.
PER CURIAM.
We have on appeal the judgment of the trial court denying James Franklin Rose, an inmate under sentence of death, relief requested under Rule 3.850, Florida Rules of Criminal Procedure. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm in part, reverse in part and remand for a new sentencing proceeding before a jury.

PROCEDURAL STATUS
A more detailed description of the facts of this case is contained in the initial direct appeal, Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983), wherein we affirmed Rose's convictions and vacated his death sentence and remanded for resentencing. Upon resentencing, the death sentence was reimposed and we affirmed. Rose v. State, 461 So.2d 84 (Fla.1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985).
In his subsequent rule 3.850 motion, Rose challenged the lawfulness of his conviction and death sentence on a variety of grounds. The trial court summarily denied Rose's motion without conducting an evidentiary hearing. On appeal, we reversed and directed the trial court to "reconsider Rose's motion and to hold an evidentiary hearing on the ineffective assistance of counsel claims and any other appropriate factual issues presented in the motion." Rose v. State, 601 So.2d 1181, 1184 (Fla.1992).
The trial court reconsidered Rose's 3.850 motion and held an evidentiary hearing on Rose's claims that he received ineffective assistance of counsel at both the guilt and penalty phases of his trial. The trial court again denied relief as to all claims and ruled that Rose's claims of ineffective assistance of counsel did not meet the standards set forth in Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 668 (1984).

APPEAL
In this appeal, Rose raises numerous claims, most of which are procedurally *569 barred,[1] meritless,[2] or moot in light of this opinion.[3] The remaining issues consist of Rose's claims that he received ineffective assistance of counsel at both the guilt and penalty phases of his trial. We affirm the trial court's denial of relief as to Rose's claim of ineffective assistance of counsel at the guilt phase. Because we find that counsel at the penalty phase was ineffective for failing to investigate and present mitigation evidence, we reverse the trial court's order denying postconviction relief and remand for a new sentencing proceeding.

GUILT PHASE PERFORMANCE OF COUNSEL
First, we consider the trial court's ruling that appellant's claims of ineffective assistance of trial counsel, based on counsel's inadequate performance during the guilt phase of his trial, were insufficient to meet the standards set forth under Strickland's two-prong test. Under Strickland, a defendant must establish two components in order to demonstrate that counsel was ineffective: (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. at 2064. As to the second prong, the defendant must establish that, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id.[4] Applying this standard, we find no error *570 by the trial court in rejecting these claims.
Rose simply has failed to demonstrate both a deficient performance and the probability of a different outcome based on the alleged deficiencies. Rose alleges trial counsel was ineffective for failing to call as witnesses several people who were at the bowling alley on the night of the victim's disappearance and who gave statements to the police that they saw the victim alive, or saw Rose's van during the time period when the State maintained that Rose had taken the victim from the bowling alley in his van and killed her. In addition, Rose alleges trial counsel was ineffective for failing to use statements from some of these witnesses to refute the State's "jealous boyfriend" theory.
At the evidentiary hearing below, trial counsel testified that each of these witnesses had inherent problems. Some were key witnesses for the State, others were very emotional and counsel felt he would be unable to control them if called to testify. Most importantly, all of these witnesses would relate testimony damaging to Rose. Many of these witnesses had told police that they saw blood on Rose's pants when he returned to the bowling alley and then saw him go to the bathroom and try to cover it up with grease. Others saw blood on Rose's van and heard Rose say the blood was from cutting himself while changing a tire. These same witnesses checked Rose's van and did not believe that a tire had been changed. At the evidentiary hearing, trial counsel testified that he was well aware of the problems with each witness and consciously decided not to call any of these witnesses who said they had seen the victim or Rose's van because their testimony would have been more detrimental than helpful.
Applying the Strickland standard to these claims, we conclude that the trial court did not err in concluding that Rose's claims of ineffective assistance of trial counsel during the guilt phase constitute claims of disagreement with trial counsel's choices as to strategy. See Cherry v. State, 659 So.2d 1069 (Fla.1995) (concluding standard is not how current counsel would have proceeded in hindsight). In light of counsel's testimony at the hearing, it is apparent that counsel was aware of the witnesses in question and knowledgeable about the pros and cons of calling them as witnesses. Based upon this knowledge, counsel made an informed strategic decision not to call them. In light of the strong likelihood that the State could have successfully impeached each of these witnesses, it is apparent that there was a reasoned basis for counsel's decision. Hence, the trial court did not err in concluding that Rose failed to demonstrate that trial counsel's performance was deficient, or that these alleged errors undermined confidence in the outcome of the guilt phase proceedings. Therefore, we affirm the trial court's denial of relief as to Rose's claims of ineffective assistance of counsel at the guilt phase of his trial.

PENALTY PHASE PERFORMANCE OF COUNSEL
We reach a contrary result on Rose's claim of ineffective assistance of counsel at the penalty phase. In this context, assuming there were errors, Rose "must demonstrate that but for counsel's errors he would have probably received a life sentence." Hildwin v. Dugger, 654 So.2d 107, *571 109 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 420, 133 L.Ed.2d 337 (1995). Such a demonstration is made if "counsel's errors deprived [defendant] of a reliable penalty phase proceeding." Id. at 110 (emphasis added). The failure to investigate and present available mitigating evidence is a relevant concern along with the reasons for not doing so. Id. at 109-10.
In Baxter v. Thomas, 45 F.3d 1501, 1512-13 (11th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995), the United States Court of Appeals for the Eleventh Circuit outlined the legal framework for considering a claim of ineffective assistance of counsel at the penalty phase of a capital trial:
An ineffective assistance of counsel claim is a mixed question of law and fact subject to plenary review under the test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). See Cunningham v. Zant, 928 F.2d 1006, 1016 (11th Cir.1991). In order to obtain a reversal of his death sentence on the ground of ineffective assistance of counsel, Baxter
must show both (1) that the identified acts or omissions of counsel were deficient, or outside the wide range of professionally competent assistance, and (2) that the deficient performance prejudiced the defense such that, without the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different.
Bolender v. Singletary, 16 F.3d 1547, 1556-57 (11th Cir.) (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064), cert. denied, ___ U.S. ___, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994).
"An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." Porter v. Singletary, 14 F.3d 554, 557 (11th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994). The failure to do so "may render counsel's assistance ineffective." Bolender, 16 F.3d at 1557.
Rose claims that he is entitled to relief under Hildwin and Baxter since the record reflects that counsel made practically no investigation of mitigation and presented little evidence of mitigation in the sentencing proceedings despite the existence of substantial evidence of mitigating circumstances that would have been uncovered if counsel had made a reasonable investigation.
Rose presented evidence at the hearing below that the following information was available had counsel conducted a reasonable investigation: (1) Rose grew up in poverty; (2) Rose was emotionally abused and neglected throughout his childhood; (3) Rose's mother locked him in a closet for extended periods of time as a child and tried to lose him and leave without him when they were out; (4) Rose was a slow learner and was retained in the fourth, fifth, and seventh grades; (5) Rose's I.Q. is 84; (6) Rose was severely injured in a 30-foot fall and suffered head trauma, chronic blackouts, dizziness, and blurred vision; (7) Rose is a chronic alcoholic; and (8) Rose had previously been characterized by a physician as schizoid.
In addition, Dr. Jethro Toomer, a clinical and forensic psychologist, testified that: (1) Rose suffers from organic brain damage; (2) Rose has a longstanding personality disorder; (3) Rose is a chronic alcoholic; (4) Rose meets the criteria for the statutory mitigator of being under the influence of an extreme emotional or mental disturbance at the time of the offense, see § 921.141(6)(b) Fla.Stat. (1993); and (5) Rose's ability to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was impaired at the time of the offense, see id. § 921.141(6)(f). Dr. Toomer's opinion was based on a psychosocial evaluation of Rose in which he administered a battery of psychological tests and reviewed Rose's school, hospital, medical and prison records. His testimony was essentially uncontested. In addition to the evidence outlined above, Rose presented substantial lay testimony regarding mitigation at the postconviction hearing which had not been investigated or was not presented by counsel during the penalty phase proceedings.
*572 It is apparent from the record that counsel never attempted to meaningfully investigate mitigation, and hence violated the duty of counsel "to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." Baxter, 45 F.3d at 1513. In short, Rose has demonstrated, largely without dispute, that there was substantial mitigation present and available in this case that was not investigated or presented by defense counsel. In fact, the trial court, in subsequently sentencing Rose after the penalty phase in question, found no mitigating circumstances to have been established by the defense. See Rose v. State, 461 So.2d 84, 85 (Fla.1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985).
However, we must also consider the reasons advanced at the evidentiary hearing as to why resentencing counsel did not investigate and present available mitigating evidence at the penalty phase. In evaluating the competence of counsel, we must examine the actual performance of counsel in preparation for and during the penalty phase proceedings, as well as the reasons advanced therefor. As we have already noted in our rejection of the claim of ineffectiveness during the guilt phase, counsel is entitled to great latitude in making strategic decisions.
Initially, we note that Rose was not represented by the same counsel at resentencing as the counsel who represented him in the original guilt phase of the trial. In contrast to the experience of guilt phase counsel, resentencing counsel had never handled a capital case before being appointed to represent Rose, and counsel was totally unfamiliar with the concept of aggravating and mitigating factors. He failed to investigate Rose's background and obtain the school, hospital, prison, and other records and materials that contained the information outlined above as to Rose's extensive mental problems, etc. Moreover, counsel testified that he felt restricted by the limited time (79 days) he had to prepare for sentencing, during a part of which counsel was married and went away on a ten-day honeymoon. Counsel also expressed concern with the trial judge's attitude that the case was a simple one requiring little preparation since there had already been one sentencing hearing.
Under these circumstances resentencing counsel chose to present an "accidental death" theory urged upon him by an appellate attorney who had previously represented Rose on appeal, but had not been appointed to represent Rose at sentencing or in any other capacity at the time. It appears that counsel acquiesced in this strategy simply because of the pressure of time and his lack of competence and experience in handling a capital sentencing proceeding. Resentencing counsel also chose to present this theory even though he thought it was far-fetched at the time. At the hearing below, resentencing counsel testified that,
I would have never in my wildest dreams gone on the theory that it was an accidental death and that it may have been a manslaughter instead of a murder and that he freaked and disposed of the body. That was something that I would have never formulated, okay. To me the better strategy would have been to constantly maintain that he did not do the crime, it's a circumstantial case, and gone with other areas of mitigation or things of that nature.
When specifically asked if appellate counsel's assistance was more help or hindrance, counsel replied, "Hindrance. He took me off track of what I would have done. I would have focused on things that would have hopefully established to a jury that he should get life."
We find counsel's performance, when considered under the standards set out in Hildwin and Baxter, to be deficient. It is apparent that counsel's decision, unlike experienced trial counsel's informed choice of strategy during the guilt phase, was neither informed nor strategic. Without ever investigating his options, counsel latched onto a strategy which even he believed to be ill-conceived.[5] Here, there was no investigation *573 of options or meaningful choice. See Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir.1991) ("[C]ase law rejects the notion that a `strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them."), cert. denied, 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992). As noted above, it appears to have been a choice directly arising from counsel's incompetency and lack of experience. However, counsel, regardless of his inexperience, was not at liberty to abdicate his responsibility to Rose by substituting his own judgment with that of an appellate colleague.[6]
We still must determine the prejudicial effect, if any, of counsel's performance. In evaluating the harmfulness of resentencing counsel's performance, we have consistently recognized that severe mental disturbance is a mitigating factor of the most weighty order, Hildwin, 654 So.2d at 110; Santos v. State, 629 So.2d 838, 840 (Fla.1994), and the failure to present it in the penalty phase may constitute prejudicial ineffectiveness. Hildwin, 654 So.2d at 110. For example, in Baxter the court held:
We hold that Baxter suffered prejudice from his attorneys' failure to conduct a reasonable investigation into his background. Psychiatric mitigating evidence "has the potential to totally change the evidentiary picture." Middleton [v. Dugger], 849 F.2d [491] at 495 [(1988)]. We have held petitioners to be prejudiced in other cases where defense counsel was deficient in failing to investigate and present psychiatric mitigating evidence. See Stephens v. Kemp, 846 F.2d 642, 653 (11th Cir.) ("prejudice is clear" where attorney failed to present evidence that defendant spent time in mental hospital), cert. denied, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988); Blanco [v. Singletary], 943 F.2d [1477] at 1503; Middleton, 849 F.2d at 495; Armstrong v. Dugger, 833 F.2d 1430, 1432-34 (11th Cir.1987) (defendant prejudiced by counsel's failure to uncover mitigating evidence showing that defendant was "mentally retarded and had organic brain damage").
45 F.3d at 1515. Indeed, the substantial mitigation that has been demonstrated on this record is similar to the mitigation found in Hildwin and Baxter to require a resentencing proceeding where such evidence may be properly presented. Phillips v. State, 608 So.2d 778, 783 (Fla.1992) (prejudice established by "strong mental mitigation" which was "essentially unrebutted"), cert. denied, 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993); Mitchell v. State, 595 So.2d 938, 942 (Fla.1992) (prejudice established by expert testimony identifying statutory and nonstatutory mitigation and evidence of brain damage, drug and alcohol abuse, and child abuse); State v. Lara, 581 So.2d 1288, 1289 (Fla.1991) (prejudice established by evidence of statutory mitigating factors and abusive childhood).
We also note that in rejecting Rose's claim, the trial court misconstrued the effect of our prior opinion in this case by stating: "[T]he Florida Supreme Court has already ruled in the case at bar that the aggravating circumstances were so severe that even a jury override would have been upheld." [7] Hence, *574 the court reasoned, as urged by the State,[8] that counsel's failure to investigate and present mitigation would have made no difference. In fact, however, our prior opinion made clear that, because the prior sentencing court found no mitigating circumstances to counter the aggravation, a death sentence could be sustained. In other words, contrary to the trial judge's conclusion, our prior holding indicates the importance of the absence of mitigation in this case, and supports a conclusion that the failure to present mitigation was extremely harmful to appellant's case before the sentencing jury.
Our confidence in the outcome of this proceeding is further undermined by the fact that at Rose's original sentencing trial, even without the presentation of substantial mitigation, the jury was deadlocked at a six-to-six vote on the recommendation of life or death. Rose v. State, 425 So.2d at 525. The jury recommended death only after the trial court gave the jury an Allen charge.[9] We vacated that death sentence and remanded for resentencing because the trial court reversibly erred in charging the jury to continue deliberations when it should have properly instructed them that a six-to-six vote constitutes a recommendation for life imprisonment. In effect, Rose has once received a recommendation of life imprisonment from a jury even without the substantial mitigation set out above.[10]

CONCLUSION
In light of the substantial mitigating evidence identified at the hearing below as compared to the sparseness of the evidence actually presented, we find that counsel's errors deprived Rose of a reliable penalty phase proceeding. We further conclude that Rose was prejudiced by the ineffective assistance of counsel at the penalty phase for failing to investigate and present available mitigating evidence. See Hildwin, 654 So.2d at 110.
We affirm the trial court's denial of relief as to all claims raised in the 3.850 motion and hearing below except for Rose's claim alleging that counsel was ineffective during the resentencing proceeding. We reverse the denial of relief as to that claim, vacate the death sentence, and remand for a new sentencing proceeding before a jury during which the jury may properly consider available evidence of aggravation and mitigation before rendering a verdict.
It is so ordered.
*575 GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, Justice, concurring in part and dissenting in part.
In order to fairly and adequately analyze this case, it is necessary to review its judicial path from the date of the death of eight-year-old Lisa Berry, who was kidnapped, murdered, and disposed of in a canal in October 1976, to the present. This case was first reviewed by the Florida Supreme Court in 1982, with the opinion filed on December 9, 1982. Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). In that decision, we affirmed the convictions of first-degree murder and kidnapping but vacated the death sentence because the trial court improperly gave the jury an Allen[11] charge when it could not break a six-to-six vote in recommending life or death. The trial court promptly held a resentencing hearing in 1983, resulting in a jury recommendation of death by a vote of eleven to one. The trial court followed that recommendation and sentenced Rose to death. This sentence was reviewed by this Court in 1984, with a unanimous decision rendered on December 6, 1984, affirming the death sentence. Rose v. State, 461 So.2d 84 (Fla.1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). The majority decision specifically found that the prior jury's deadlock did not rise to the level of an advisory recommendation to the sentence imposed and that the advisory recommendation in this resentencing was the same as that of the prior sentencing: death. Id. at 86.
In 1987, this Court considered Rose's petition for writ of habeas corpus and motion for stay of execution following the governor's issuance of a death warrant. Rose v. Dugger, 508 So.2d 321 (Fla.), cert. denied, 484 U.S. 933, 108 S.Ct. 308, 98 L.Ed.2d 267 (1987). The Court, in a five-to-one decision with Justice Barkett concurring in part and dissenting in part, denied the petition for writ of habeas corpus and vacated the stay of execution. The case next came to this Court in 1992 for review of a summary denial by the trial court of a Florida Rule of Criminal Procedure 3.850 motion. In an opinion authored by Justice Barkett, this Court reversed the trial court and directed the trial court to hold a hearing on the motion. Rose v. State, 601 So.2d 1181 (Fla.1992). In discussing the factual matters alleged in the motion, the opinion only sets forth guilt-phase facts, and it specifically states that the guilt-phase facts alleged formed the issue requiring an evidentiary hearing. Id. at 1184. The opinion notes that the State conceded an evidentiary hearing was required on some factual matters; however, these concessions specifically related to Rose's ineffectiveness claim to the guilt phase of the trial. Thus, even though the last line of the opinion directs the trial court to reconsider the motion and to hold an evidentiary hearing on the ineffectiveness of counsel claims,[12] the thrust of that decision was clearly as to allegations about the guilt phase of Rose's trial, the trial court's disposition of which the present majority affirms. But in the piecemeal style which feeds the frustration of finality in capital cases, the present majority remands this case for another sentencing hearing on a subject about which the majority was silent in 1992.
I believe that the majority's decision totally ignores what a unanimous majority of this Court approved in Remeta v. Dugger, 622 So.2d 452 (Fla.1993), a case upon which the trial court relied in its order denying the rule 3.850 motion. In Remeta, we stated:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court *576 must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....
Id. at 454 (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)).
To the contrary, the majority totally disparages trial counsel's decisions which trial counsel testified were made for strategic purposes. The majority presumes that trial counsel was ineffective because this was counsel's first sentencing proceeding. This presumption was rejected by this Court in Remeta, which also involved defense counsel's first sentencing proceeding. Id. Moreover, the present majority opinion omits the fact that trial counsel under scrutiny here had been an assistant state attorney for three years prior to this sentencing proceeding.[13]
Likewise, the majority omits any reference to trial counsel's testimony before the trial judge that his strategy decisions were dictated by Rose.[14] The attorney testified in response to the question of whether he had a strategic reason for not getting a mental health expert to address mitigation:
Okay. Okay, I meanI'm going to answer this the only way I know how to answer it. Mr. Rose was more concerned with a new trial than getting life. Mr. Carres was more concerned with guilt or innocent than getting life. They both sidetracked me to some degree from mitigation as to the events that occurred. Okay.
Mr. Rose didn't offer me a lot to work with when we sat down and discussed it except alternative theories that I was going over with Mr. Carres. I took the witnesses he gave me and I developed whatever he gave me and I went with it. He wouldn't testify on his own behalf at the sentencing phase for his life. There was a certificate of merit signed by Ralph Ray which probably was, I think, one of the most important things I could put in because here is the man who is trying to have him sentenced to death commending him as a good citizen for thwarting some crime. He wouldn't let that in for fear that he would be classified as a snitch. I mean, I took what he gave me and I went with it in the period that I had to do everything.
Given this testimony, the majority fails to explain why this case is different in this respect to what this Court said in a capital case involving a different Rose. See Rose v. State, 617 So.2d 291 (Fla.), cert. denied, 510 U.S. 903, 114 S.Ct. 279, 126 L.Ed.2d 230 (1993). In that case, the defendant similarly wanted penalty-phase counsel to continue pursuing the defense that he was innocent and that he was not present at the scene of the murder. This Court said in that opinion:
Against Rousen's advice, Rose would not allow counsel to pursue other defenses such as insanity or intoxication. According to Rousen, Rose did not change his posture at the penalty phase. "When a defendant preempts his attorney's strategy by insisting *577 that a different defense by followed, no claim of ineffectiveness can be made." Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985), cert. denied, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987).
Id. at 294.
It is apparent that the present majority has decided not to follow that Rose decision. But in my view, that decision has the force of logic. It is obvious to me that the majority does not want to give any weight to what Rose himself wanted to do. In so doing, I believe this Court exchanges its judicial role for that of a guardianship role. This Court should respect the right of a competent defendant to decide upon his own defense strategy. This also requires a respect for the consequences of that strategy. Moreover, since the trial judge had the benefit of counsel's live and in-person testimony, it should be for the trial judge, not this Court, to determine the weight that should be given to a defendant's cooperation and instructions to counsel in evaluating counsel's performance. Since the record shows that there was competent, substantial evidence to support the judge's findings and conclusions, I would affirm the denial of the motion for postconviction relief.
I specifically point out that the majority decision today expressly contradicts what this Court said in the 1984 decision in this case in upholding the death sentence. In that prior opinion, we specifically found that the first sentencing jury's vote of six to six, before the court gave the jury an Allen charge, did not rise to the level of an advisory recommendation of life. This is directly conflicting with the present majority's statement that "[i]n effect, Rose has once received a recommendation of life imprisonment from a jury, even without the substantial mitigation set out above." The present majority casts aside the law of the case on that point.
I further expressly disagree with the majority opinion that in his sentencing order, the trial judge misconstrued the effect of our 1987 opinion in this case when he stated that "[t]he Florida Supreme Court has already ruled in the case at bar that the aggravating circumstances were so severe that even a jury override would have been upheld." I read the trial court's statement to mean that this Court had already held that this is a strong case for death and that even if it is assumed that counsel was deficient in the way Rose argued in 1994, the contended deficiencies were not sufficient to demonstrate that the result would be probably be different. I believe this is a correct interpretation of how the majority of this Court viewed this case in 1987.
I concur that Rose did not receive ineffective assistance of counsel at the guilt phase of his trial. However, I cannot agree that Rose did not receive effective assistance of counsel at the penalty phase or that even assuming arguendo that counsel was ineffective, there was the probability of a different outcome.
NOTES
[1] Claims barred because they were or should have been raised on direct appeal are: (1) that Rose's in-custody statements were obtained and admitted over his assertion of his right to counsel; (2) that the State knowingly used the misleading and false testimony of the medical examiner who performed the autopsy in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); (3) that autopsy photographs were withheld by the state in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (4) that Rose's confrontation rights were violated when certain proceedings were conducted outside his presence; and (5) that the State withheld material information concerning Rose's statements to police in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the related assertion that the officer's testimony at the suppression hearing was false. See Medina v. State, 573 So.2d 293, 295 (Fla.1990) (holding that allegations of ineffective assistance cannot be used to circumvent rule that post-conviction proceedings cannot serve as second appeal).
[2] We find the claim that Rose was prejudiced by an alleged conflict of interest based on Broward County's budgeting for capital improvements and special assistant public defenders meritless on its face. As to Rose's claim that he did not receive a full and fair 3.850 hearing, we find that the trial court did not abuse its discretion in the way it conducted the evidentiary hearing. See Medina v. State, 573 So.2d at 295.
[3] Because we remand this case for a new sentencing proceeding, the fact that the jury was not instructed on the definitions of premeditated and felony murder at the penalty phase is now a moot issue.
[4] In Strickland, the Supreme Court explained in some detail the standard chosen:

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela-Bernal, 458 U.S. 858, 866-867 [102 S.Ct. 3440, 3445-3446, 73 L.Ed.2d 1193] (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. Respondent suggests requiring a showing that the errors "impaired the presentation of the defense." Brief for Respondent 58. That standard, however, provides no workable principle. Since any error, if it is indeed an error, "impairs" the presentation of the defense, the proposed standard is inadequate because it provides no way of deciding what impairments are sufficiently serious to warrant setting aside the outcome of the proceeding.
On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. This outcome-determinative standard has several strengths. It defines the relevant inquiry in a way familiar to courts, though the inquiry, as is inevitable, is anything but precise. The standard also reflects the profound importance of finality in criminal proceedings. Moreover, it comports with the widely used standard for assessing motions for new trial based on newly discovered evidence. See Brief for United States as Amicus Curiae 19-20, and nn. 10, 11. Nevertheless, the standard is not quite appropriate.
Even when the specified attorney error results in the omission of certain evidence, the newly discovered evidence standard is not an apt source from which to draw a prejudice standard for ineffectiveness claims. The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged. Cf. United States v. Johnson, 327 U.S. 106, 112 [66 S.Ct. 464, 466, 90 L.Ed. 562] (1946). An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.
Accordingly, the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution. United States v. Agurs, 427 U.S., at 104, 112-113 [96 S.Ct., at 2397-98, 2401-02], and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness, United States v. Valenzuela-Bernal, supra, 458 U.S., at 872-874 [102 S.Ct., at 3449-50]. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
466 U.S. at 693-94, 104 S.Ct. at 2067-68.
[5] The strategy appears to be closely akin to a claim of residual or lingering doubt, a claim which this Court has repeatedly held is not an appropriate matter to be raised in mitigation during the penalty phase proceedings of a capital case. See King v. State, 514 So.2d 354 (Fla. 1987), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); Aldridge v. State, 503 So.2d 1257 (Fla.1987); Burr v. State, 466 So.2d 1051 (Fla.), cert. denied, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985).
[6] The State suggests that resentencing counsel did not investigate and present mitigating evidence because Rose insisted that counsel put on the "accidental death" theory at the penalty phase, rather than pursue mitigation. However, a careful reading of the record indicates otherwise. Resentencing counsel testified that the accidental death theory "changed everything that Mr. Rose ever stood for as far as his view of this case. He never admitted to me he did this crime. Never. Okay. So I mean this theory was a Mr. Carres [the appellate attorney] theory." We find no support in the record for the position that counsel's strategy was forced upon him by the defendant.
[7] In its order, the circuit court presumably is referring to the following language from Rose v. Dugger, 508 So.2d 321 (Fla.), cert. denied, 484 U.S. 933, 108 S.Ct. 308, 98 L.Ed.2d 267 (1987):

In sentencing Rose to death, the trial judge found no mitigating circumstances and three aggravating circumstances: 1) Rose was under sentence of imprisonment when he committed the murder; 2) Rose had been previously convicted of a violent felony; and 3) the murder was committed during the commission of a kidnapping. If the jury had recommended life, the judge would have been obligated to determine whether "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla.1975). Even applying this strict standard, we are satisfied that a death penalty would have been imposed and there is no reasonable probability that the result would have been different.
Id. at 324 (emphasis added). The court failed to consider that this Court's observation in Rose v. Dugger was made with respect to the then-existent record. That is, this Court's analysis was not based on a record containing any of the mitigating evidence presented at the 3.850 evidentiary hearing now under review.
[8] The State repeats the same argument on appeal.
[9] See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[10] We note the jury's vote only as part of the factual background we must consider in determining the issue of prejudice. We have previously determined that this vote, which the trial court erroneously found to be unacceptable, did not have the legal effect of a jury recommendation for life, which recommendation in turn would have sharply limited the judge's sentencing discretion under Tedder v. State, 322 So.2d 908 (Fla.1975). See Rose v. State, 461 So.2d 84 (Fla.1984). In our initial review of Rose's conviction, we held:

Defendant also challenges his death sentence. He contends that the trial court reversibly erred in giving the "Allen charge" during the penalty phase of the trial. We agree. The record indicates that the charge was given after the jury advised the court by a note which read, "We are tied six to six, and no one will change their mind at the moment. Please instruct us." At that point, the trial judge should have advised the jury that it was not necessary to have a majority reach a sentencing recommendation because, if seven jurors do not vote to recommend death, then the recommendation is life imprisonment. There was no reason to give the "Allen charge" during the penalty phase of the trial.
Rose v. State, 425 So.2d 521, 524-25 (Fla.1983).
[11] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[12] The opinion also directed the trial court to consider any other appropriate factual matters presented in the motion. Rose, 601 So.2d at 1184.
[13] Additionally, I note that the majority points to counsel's testimony that appellate counsel's assistance was a hinderance. However, this statement was in response to the question of whether, in retrospect, counsel felt that his assistance was more of a help or hinderance. This backward-looking inquiry is exactly the type in which Strickland and Remeta instruct us not to engage.
[14] The majority opinion, at note 6, quotes counsel stating that this accidental death theory was actually appellate counsel's and not Rose's. However, the full statement was:

In the time that I had with this file that I had we spent a lot of time talking to doctors and blood experts and things of that nature to try to translate this resentencing into something that would enlighten the Court that he may have been involved in a manslaughter instead of a murder. Which changed everything that Mr. Rose ever stood for as far as his view of the case. He never admitted to me he did this crime. Never. Okay.
So I mean this theory was a Mr. Carres theory. I had never done a capital case, he had done a lot of them, I relied on the man who had been with this case for five or six years. Did he distort my professional view of what I would have done, yes, he did at the time. If I did this today, would I have done the same thing, no, I probably would have been a lot more forceful because I've done a lot of these murders since. But, you know, this is something you have to ask him because he came in with memos and thoughts and witnesses and ideas and everyoneMr. Rose seemed to agree and this is where we are going to go with this thing.