838 So.2d 485 (2002)
Michael George BRUNO, Sr., Petitioner,
v.
Michael W. MOORE, etc., Respondent.
No. SC02-467.
Supreme Court of Florida.
December 5, 2002.
Rehearing Denied February 11, 2003.
*486 Todd G. Scher, Litigation Director, Fort Lauderdale, FL, for Petitioner.
Richard E. Doran, Attorney General, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, FL, for Respondent.
PER CURIAM.
Michael George Bruno petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. For the reasons expressed below, we deny the petition.
Bruno was convicted of first-degree murder and sentenced to death for the 1986 murder of Lionel Merlano. The facts of the underlying crime were as follows:
On August 8, 1986, appellant Michael Bruno and his fifteen-year-old son, Michael Jr., were in the apartment of a friend, Lionel Merlano, when Bruno beat Merlano with a crowbar. Bruno then sent Michael Jr. elsewhere in the apartment to fetch a handgun and, when the boy returned with a gun, Bruno shot Merlano twice in the head. Bruno was arrested several days later and gave a taped statement wherein he at first denied any knowledge of the murder but then later admitted committing the crime, claiming it was self-defense. Michael Jr. also gave a full statement to police. Prior to being arrested, Bruno made numerous inculpatory statements to friends concerning both his plan to commit the murder and the commission of the crime itself. Police found the gun in a canal where a friend, Jody Spalding, saw Bruno throw it.
Bruno was charged with first-degree murder and robbery (he stole a stereo from the apartment after the murder) and his strategy at trial was to raise a *487 reasonable doubt in jurors' minds by claiming that Jody Spalding was the killer. He was convicted as charged, and the judge followed the jury's eight-to-four vote and imposed a sentence of death based on three aggravating circumstances and no mitigating circumstances.
Bruno v. State, 807 So.2d 55, 60-61 (Fla. 2001) (footnote omitted). On direct appeal, this Court affirmed the convictions and sentence of death. See Bruno v. State, 574 So.2d 76 (Fla.1991). Bruno subsequently filed a Florida Rule of Criminal Procedure 3.851 motion, which was denied by the trial court. This Court recently affirmed the trial court's denial of that motion. See Bruno, 807 So.2d at 60.
Bruno now petitions this Court for a writ of habeas corpus,[1] raising three claims. First, Bruno argues that this Court failed to conduct an adequate harmless error analysis on direct appeal. We initially note that this issue is procedurally barred. See Bottoson v. State, 813 So.2d 31, 35 (Fla.2002) ("This Court has consistently held that habeas claims wherein the defendant challenges this Court's previous standard of review in the case are procedurally barred."). As pointed out by the State, Bruno raised this issue in his motion for rehearing on direct appeal and that this Court denied that motion.
Even if the claim was not procedurally barred, we still would find no merit to the claim. The judge presiding over Bruno's trial found six aggravators: (1) prior violent felony; (2) the murder was committed in the course of a robbery; (3) it was committed to avoid arrest; (4) it was committed for pecuniary gain; (5) it was heinous, atrocious, or cruel (HAC); and (6) it was cold, calculated, and premeditated (CCP). The trial judge stated in the sentencing order that only three aggravators were applicable because aggravators (1), (2), and (3) above were based on the same aspect of the criminal episode and therefore were considered by the Court as a single aggravating circumstance. We recognize that the trial judge's sentencing order is confusing. If aggravators (1), (2), and (3) merged into a single aggravator, there would still be four aggravators: the merged aggravator plus the remaining threenumbers (4), (5), and (6). Since the trial judge stated that only three aggravators were applicable, it appears that the trial judge meant to merge the first four aggravators.
On appeal, this Court concluded that only three aggravators applied:
[T]he judge concluded that there were only three aggravating circumstances which could be considered in passing sentence because he concluded that the circumstances listed as (a), (b) and (c) were based on the same aspect of the criminal episode.
We agree with the trial court that only three aggravating circumstances were proper for consideration, although we arrive at this conclusion in a somewhat different manner. The aggravating circumstance of a prior violent felony was inapplicable because the felony in question was the contemporaneous conviction of the robbery of Merlano. However, the trial court did properly find that the murder was committed during a robbery and was committed for pecuniary gain. These two circumstances are based on the same aspect of the criminal episode and should properly be considered as a single aggravating factor. The evidence was insufficient to support the finding that the murder was committed for the purpose of avoiding or *488 preventing a lawful arrest. Standing alone, the fact that the victim could identify the murderer does not prove beyond a reasonable doubt that the elimination of a witness was a dominant motive for the killing.
. . . .
... Therefore, we conclude that the murder was aggravated by the three following valid factors: (i) that the murder was committed during a robbery and for pecuniary gain; (ii) that the murder was heinous, atrocious, or cruel; and (iii) that the murder was cold, calculated, and premeditated.
574 So.2d at 81-82 (citations omitted). This Court ultimately upheld Bruno's death sentence:
In light of three statutory aggravating circumstances and no statutory mitigating circumstances, we find no error in the judge's sentence of death. We also reject Bruno's argument that his sentence is disproportionate to other cases involving the death sentence.
Id. at 83.
Bruno claims that when this Court determined on direct appeal that several of the aggravators were not supported by the evidence, it was required to conduct a harmless error analysis. Bruno asserts that this Court did not conduct a harmless error analysis, or if it did, it was inadequate. Bruno asserts that the proper test for determining whether an error is harmless is "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Yates v. Evatt, 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991). Bruno cites to Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), as an example of a case where this Court misapplied the harmless error test. In Sochor, both this Court and the United States Supreme Court concluded that the trial judge improperly weighed the CCP aggravator since that aggravator was not supported by the evidence. Nevertheless, this Court upheld the death sentence:
We also disagree with Sochor's claim that his death sentence is disproportionate. The trial court carefully weighed the aggravating factors against the lack of any mitigating factors and concluded that death was warranted. Even after removing the aggravating factor of cold, calculated, and premeditated there still remain three aggravating factors to be weighed against no mitigating circumstances. Striking one aggravating factor when there are no mitigating circumstances does not necessarily require resentencing. Robinson v. State, 574 So.2d 108 (Fla.1991); Holton v. State, 573 So.2d 284 (Fla.1990); James v. State, 453 So.2d 786 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984); Francois v. State, 407 So.2d 885 (Fla.1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982). Under the circumstances of this case, and in comparison with other death cases, we find Sochor's sentence of death proportionate to his crime.
Sochor, 580 So.2d at 604. Upon review, the Supreme Court found this Court's "harmless error" analysis to be inadequate:
Not only does the State Supreme Court's opinion fail so much as to mention "harmless error," see Yates v. Evatt, 500 U.S. 391, 406, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), but the quoted sentences numbered one and five expressly refer to the quite different enquiry whether Sochor's sentence was proportional.
The State tries to counter this deficiency by arguing that the four cases cited following the fourth sentence of the quoted passage were harmless-error cases, citation to which was a shorthand *489 signal that the court had reviewed this record for harmless error as well. But the citations come up short. Only one of the four cases contains language giving an explicit indication that the State Supreme Court had performed harmless-error analysis. See Holton v. State, 573 So.2d 284, 293 (1990) ("We find the error was harmless beyond a reasonable doubt"). The other three simply do not, and the result is ambiguity.
Although we do not mean here to require a particular formulaic indication by state courts before their review for harmless federal error will pass federal scrutiny, a plain statement that the judgment survives on such an enquiry is clearly preferable to allusions by citation. In any event, when the citations stop as far short of clarity as these do, they cannot even arguably substitute for explicit language signifying that the State Supreme Court reviewed for harmless error.
In sum, Eighth Amendment error occurred when the trial judge weighed the coldness factor. Since the Supreme Court of Florida did not explain or even "declare a belief that" this error "was harmless beyond a reasonable doubt" in that "it did not contribute to the [sentence] obtained," Chapman, supra, 386 U.S. at 24, 87 S.Ct. 824, the error cannot be taken as cured by the State Supreme Court's consideration of the case. It follows that Sochor's sentence cannot stand on the existing record of appellate review. We vacate the judgment of the Supreme Court of Florida, and remand the case for proceedings not inconsistent with this opinion.
Sochor, 504 U.S. at 539-41, 112 S.Ct. 2114.
We find that the instant case is distinguishable from Sochor. In Sochor, the Supreme Court held that the trial judge erred by weighing the CCP factor, and therefore, in order for the error to be considered harmless, this Court was required to conduct a harmless error analysis. In the instant case, despite the confusing sentencing order, the trial court specifically held that only three aggravators were applicable to Bruno's case: HAC, CCP, and the merged aggravator. On appeal, this Court agreed that the three aggravators weighed by the trial court were applicable to this case.[2] Therefore, no error occurred because all of the aggravators that were actually weighed by the trial court were upheld by this Court. If no error occurred, it follows that there was no need for a harmless error analysis.
Nevertheless, in an abundance of caution, even if the trial court erred in its consideration of the aggravators, we would find such an error harmless beyond a reasonable doubt. As this Court stated in our opinion on direct appeal, the trial record supports the finding of three aggravators in this case: (1) that the murder was committed during a robbery and for pecuniary gain (merged); (2) HAC; and (3) CCP. The trial court determined that Bruno failed to establish any mitigation, either statutory or nonstatutory, and on direct appeal, this determination was upheld. Therefore, any error committed by the trial court was harmless beyond a reasonable doubt in that it did not contribute to the death sentence. Eliminating any such error would have made no difference in Bruno's sentence.
Bruno further argues that this Court erred in limiting its analysis on direct appeal to only statutory mitigators. He *490 claims that this Court erred in failing to consider nonstatutory mitigating circumstances. There is no merit to this argument. As the State points out, the trial court concluded in the sentencing order that Bruno did not present any evidence in support of nonstatutory mitigation.
We next turn to Bruno's second claim, wherein Bruno alleges that appellate counsel was ineffective for several reasons. We address each of these reasons in turn.
Appellate counsel's ineffectiveness is appropriately raised in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). In order to grant habeas relief on the basis of ineffectiveness of appellate counsel, this Court must determine
whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069.
Bruno's first subclaim of ineffectiveness concerns the trial court's failure to hold a competency hearing. Bruno argues that despite the fact that Dr. Stillman was appointed to evaluate Bruno, no competency hearing was ever held. During the penalty phase, Dr. Stillman testified that Bruno was insane at the time of the offense. After the jury rendered its recommendation, trial counsel moved for a post-trial competency evaluation, which was denied by the trial court. Hence, Bruno claims that he was tried and sentenced even though he may have been incompetent. He claims that appellate counsel was ineffective in failing to raise this issue.
There is no merit to this claim. Prior to trial, defense counsel filed a motion for the appointment of a mental health expert. The trial court entered an order appointing Dr. Stillman. The record would later reveal that Dr. Stillman examined Bruno pretrial and determined that Bruno was neither insane nor incompetent.[3] Since defense counsel did not request a competency hearing prior to trial, the trial court cannot be faulted for not holding one. Therefore, appellate counsel cannot be deemed ineffective for failing to argue that a competency hearing should have been held prior to trial. During the penalty phase, Dr. Stillman opined that Bruno was insane at the time of the crime.[4] Prior to *491 sentencing, the trial court denied defense counsel's request for a psychological examination.
Appellate counsel did argue on direct appeal that "the trial court erred in failing to conduct an evidentiary hearing [or] declare a mistrial or continuance of the penalty phase when the dispute between trial counsel and his mental health expert was brought to the court's attention." 574 So.2d at 83. This issue was summarily rejected by this Court in its direct appeal opinion. See id. Insofar as the instant issue concerns appellate counsel's failure to argue that the trial court failed to allow a psychological examination after the penalty phase, the issue is substantially similar to the issue already rejected by this Court and is therefore procedurally barred.
Next, Bruno claims that appellate counsel failed to argue on direct appeal that the trial court erred in admitting certain photographs. Appellate counsel's original brief included the issue, but the original brief exceeded 100 pages and was stricken by this Court. The issue concerning the photographs was not included in the amended brief.
The admission of photographic evidence of a murder victim is within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent abuse. See Gudinas v. State, 693 So.2d 953, 963 (Fla.1997). "While a trial court should exercise caution in admitting particularly gruesome photographs, and in limiting their numbers, such photographs may still be relevant." Larkins v. State, 655 So.2d 95, 98 (Fla.1995). This Court has upheld the admission of photographs where such photographs were relevant to "explain a medical examiner's testimony, to show the manner of death, the location of wounds, and the identity of the victim." Id. at 98.
In this case, the State sought to introduce a group of autopsy photographs during the medical examiner's testimony at the guilt phase of Bruno's trial. Over trial counsel's objection, the trial court permitted the photographs, explaining, "Doctor Ongley has looked at them and indicated to the court that each of them would be of value and assist his testimonyI do not feel they are necessarily redundant and I do not feel they are necessarily gory." Based on this statement, we conclude that the trial court did not abuse its discretion in admitting the photographs into evidence because they were relevant to show the nature and extent of the victim's injuries. See Rutherford v. Moore, 774 So.2d 637, 647 (Fla.2000). Accordingly, appellate counsel was not ineffective for failing to raise this claim.
In his next subclaim of ineffectiveness, Bruno alleges that the trial court failed to order the State to disclose information regarding prospective jurors. Prior to trial, defense counsel filed a motion to compel the State to disclose information concerning prospective jurors. Bruno claims that there is no indication in the record that the State supplied this information. Therefore, Bruno claims that the trial court erred in ensuring that this information was disclosed and appellate counsel erred in failing to raise this issue on appeal. However, the burden is on Bruno to prove that the State failed to disclose the information. There is no indication in the record that the State did not disclose the requested information. Since the record does not support Bruno's claim, he has failed to meet his burden of proof.
*492 Finally, Bruno claims that appellate counsel failed to ensure that a complete record on appeal was available. During the pendency of Bruno's direct appeal, appellate counsel filed a motion to supplement the record on appeal. The motion sought to include all evidence considered by the trial court in sentencing, such as the presentence investigation report, letters from Bruno's wife, and expert reports. This Court granted the motion. Bruno filed a second motion to supplement, noting that several of the items previously requested were certified by the clerk of the trial court as missing from the clerk's file. Bruno asked this Court to order the lower court to locate or reconstruct the missing evidence. This Court granted the motion.
At the relinquishment hearing, trial counsel reminded the trial judge that Dr. Stillman had testified during the penalty phase that Bruno was insane at the time of the crime. Trial counsel recalled that during the penalty phase, he told the court at sidebar that Dr. Stillman's testimony was contrary to the reports that he had received from Dr. Stillman that indicated that Bruno was not insane. Counsel further recalled that he declined the court's request to put Dr. Stillman's reports into evidence because he did not want the jury to see them.[5]
After the relinquishment hearing, the issue concerning Dr. Stillman's letters was dropped. The letters were later destroyed by Hurricane Andrew. Bruno now claims that appellate counsel should have requested this Court to require the trial court to include Dr. Stillman's letters in the record.
There is no merit to this claim. As the State points out, Dr. Stillman's letters were never made a part of the record. Appellate counsel cannot be deemed ineffective on this basis. See Thomas v. Wainwright, 495 So.2d 172, 173 (Fla.1986) ("Appellate counsel cannot be faulted for not ensuring the inclusion in the record of documents not placed in the record by the presiding judge.").
As his third habeas claim, Bruno alleges that his sentence violates Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In Bottoson v. Moore, 833 So.2d 693 (Fla.2002); and King v. Moore, 831 So.2d 143 (Fla.2002), this Court rejected this claim.
Accordingly, for the reasons expressed in this opinion, we deny Bruno's petition for habeas corpus.
It is so ordered.
SHAW, WELLS, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
ANSTEAD, C.J., and PARIENTE, J., concur in result only.
NOTES
[1] Bruno's petition is timely pursuant to Mann v. Moore, 794 So.2d 595 (Fla.2001).
[2] The trial court seemingly merged four aggravators into one. On appeal, this Court determined that two of the four merged aggravators were not supported by the evidence. Regardless of this fact, in the end, the trial court still only weighed three aggravators.
[3] At a sidebar during the penalty phase, defense counsel told the trial court that he had received two letters from Dr. Stillman prior to trial indicating that Bruno was neither insane nor incompetent. Both letters were subsequently destroyed during Hurricane Andrew.
[4] After the guilt phase but prior to the penalty phase, Dr. Stillman met with members of Bruno's family. It was during these interviews that Dr. Stillman came to the conclusion that Bruno was insane. When Dr. Stillman opined that Bruno was insane, defense counsel asked for a sidebar and indicated to the trial judge that Dr. Stillman's testimony took him by surprise because Dr. Stillman was examining Bruno to render an opinion as to possible mental mitigating circumstances, not whether he was sane at the time the crime was committed. Defense counsel told the trial judge that prior to Dr. Stillman's testimony, he had no reason to believe that Bruno was not competent to stand trial or was insane at the time the offense was committed. Defense counsel explained that Dr. Stillman had sent him two letters prior to trial wherein Dr. Stillman explained that Bruno was neither insane nor incompetent. Defense counsel explained his surprise to the trial judge in order to justify his subsequent motion for an additional psychological examination.
[5] After the trial in this case concluded, Dr. Stillman's reports were allegedly destroyed when trial counsel's storage facility was hit by Hurricane Andrew.