859 So.2d 495 (2003)
Michael RIVERA, Appellant,
v.
STATE of Florida, Appellee.
Michael Rivera, Petitioner,
v.
James V. Crosby, etc., et al., Respondents.
Nos. SC01-2523, SC02-1788.
Supreme Court of Florida.
September 11, 2003.
Rehearing Denied October 31, 2003.
*499 Martin J. McClain, Special Assistant CCRC, and Suzanne Myers, Assistant CCRC, Office of the Capital Collateral Regional CounselSouth, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Celia A. Terenzio, Assistant Attorney General, Fort Lauderdale, FL, for Appellee/Respondents.
PER CURIAM.
Michael Rivera, a prisoner under the sentence of death, appeals an order entered by the trial court denying his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.851. Rivera also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.; art. V, § 3(b)(9), Fla. Const. These cases have been consolidated. For the reasons set out herein, we affirm the trial court's denial of postconviction relief and deny habeas relief.

PROCEEDINGS TO DATE
At trial, Michael Rivera (Rivera) was convicted of the first-degree murder of eleven-year-old Staci Lynn Jazvac.[1] After the penalty phase, wherein aggravating and mitigating evidence was presented, the jury unanimously recommended a death sentence. See Rivera v. State, 561 So.2d 536, 538 (Fla.1990). The trial court imposed a death sentence, finding the existence of four aggravating circumstances (prior violent felony; murder committed during commission of an enumerated felony; heinous, atrocious, or cruel (HAC); and cold, calculated, and premeditated (CCP)) and one statutory mitigating circumstance (defendant under the influence of extreme mental or emotional disturbance). Id. at 538 n.n.4-5. The trial court did not find any nonstatutory mitigating factors in this case. Id. at 538. On direct appeal, this Court affirmed Rivera's first-degree murder conviction and death sentence, but found that the record did not support the trial court's finding of the CCP aggravator. Id. at 540. Although this Court invalidated the CCP aggravator, we concluded: "On this record, we are persuaded that the one mitigating factor weighed against the magnitude of the aggravating factors would render the same result in the trial court below, absent the *500 single invalidated aggravating circumstance." Id. at 541.
Subsequently, Rivera filed a postconviction motion raising twenty claims. See Rivera v. State, 717 So.2d 477, 480 (Fla. 1998). The trial court held an evidentiary hearing on some claims, but summarily denied others. Id. at 479-80. On appeal of the trial court's denial of relief, this Court affirmed the trial court's denial of postconviction relief on all but one issue. Id. at 485. This Court remanded the case to the trial court, instructing it to hold an evidentiary hearing on the sole issue of alleged penalty phase ineffective assistance of counsel (IAC), stating: "Considering the volume and extent of [the 21] alleged mitigators in comparison to the limited mitigation actually presented at trial, we agree with Rivera that he warrants an evidentiary hearing on his claim of penalty phase ineffective assistance of counsel." Id.
On April 26 and 27, 1999, the trial court held an evidentiary hearing regarding the penalty phase IAC claim and subsequently entered an order denying relief. In its order, the trial court found that the penalty phase attorney's performance was not deficient and that, even assuming some deficiency had been established, in light of the mitigation evidence presented at the postconviction evidentiary hearing, prejudice had not been established. In other words, the defendant was not deprived of a reliable penalty phase proceeding.
Rivera now appeals and claims error in the trial court's denial of postconviction relief on the penalty phase IAC claim after remand, and also claims the trial court denied him due process in a number of evidentiary rulings at the hearing.

APPEAL
As summarized by this Court in a previous opinion, Rivera argued in his postconviction motion that penalty phase counsel should have investigated and presented the following evidence of mitigation:
(1) dissociative disorder; (2) psychosexual disorder; (3) history of hospitalization for mental disorders; (4) sexual abuse as a child; (5) expressions of remorse; (6) a substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law; (7) childhood trauma; (8) developmental age; (9) long-term personality disorder; (10) acceptable behavior at trial; (11) reduction in sentence by trial judge in prior case of sexual battery; (12) under influence of drugs at time of offense; (13) non-applicability of the aggravators; (14) drug abuse problem; (15) character testimony from family members; (16) psychotic depression and feelings of rage against himself because of strong pedophilic urges; (17) no drug or alcohol treatment program; (18) substantial domination by alternate personality; (19) artistic ability; (20) capable of kindness; and (21) family loves him.
Rivera, 717 So.2d at 484-85. Our review of the evidentiary hearing transcript and the record in this case leads us to conclude that many of the issues now raised on appeal may be disposed of without extensive discussion because they are either procedurally barred[2] or without *501 merit.[3] The remaining issues, however, largely concerning trial counsel's failure to present more detailed penalty phase evidence of Rivera's drug use, are discussed in turn.

INEFFECTIVE ASSISTANCE OF COUNSEL
In order to prove a claim of ineffective assistance of counsel, a defendant must establish two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. We have held that for a defendant to prevail in an IAC claim, there must be a demonstration that "counsel's errors deprived [defendant] of a reliable penalty phase proceeding." Hildwin v. Dugger, 654 So.2d 107, 110 (Fla. 1995).
This Court has characterized IAC claims as presenting a mixed question of law and fact subject to plenary review based on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1032 (Fla. 1999) (citing Rose v. State, 675 So.2d 567, 571 (Fla.1996)). "The appellate court must defer to the trial court's findings on factual issues but must review the court's ultimate conclusions on the deficiency and prejudice prongs de novo." Bruno v. State, 807 So.2d 55, 62 (Fla.2001).
This Court has long held that trial counsel has a duty to conduct a reasonable investigation into the defendant's background for possible mitigating evidence. See Rose v. State, 675 So.2d 567, 571 (Fla. 1996). We have explained that "[t]he failure *502 to investigate and present available mitigating evidence is a relevant concern along with the reasons for not doing so." Id. (citing Hildwin). The United States Court of Appeals for the Eleventh Circuit has succinctly explained the test to ascertain whether counsel's failure to investigate and present mitigating evidence was deficient:

First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted.
Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir.1988) (citation omitted). We have repeatedly applied this same test and do so again today.

HISTORY OF DRUG USE
Rivera alleged that counsel was ineffective during the penalty phase of his trial for failing to investigate and present mitigating evidence of a history of drug use, including Rivera's drug use around the time of the murder. Rivera argues that his history of drug use would support a finding of the statutory mitigator that at the time of the murder he had a substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. After the evidentiary hearing, the trial court rejected this claim and concluded: "Defense counsel ... made a strong effort to present to the jury the mitigating factor that the Defendant was not able to appreciate the criminality of his conduct, presenting evidence of the Defendant's drug usage and his cognitive decline."
In support of Rivera's IAC claim that trial counsel should have put on more evidence of his drug use history, addiction, and dependence, several lay witnesses testified at the evidentiary hearing that Rivera began drug use at an early age, that he experimented with many types of drugs, and that he may have abused drugs. However, the trial court found in its order denying postconviction relief that "the evidence presented by appellate counsel during the evidentiary hearing was practically identical to the evidence presented by [trial counsel] during trial."
The trial court essentially concluded that the fact that some lay witnesses could have given slightly more detail about Rivera's history of drug use than the defense expert actually presented in this case was insufficient to meet the Strickland standard that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.[4]
*503 We must determine whether the record supports this factual finding. The record reflects that Dr. Patsy Ceros-Livingston, the defense expert who evaluated Rivera for trial, spent some seven and one-half hours interviewing Rivera. She then testified during the penalty phase before the jury and trial court that Rivera began using marijuana, LSD, quaaludes, and beer in 1996 and that as an adult he used "base rock" and marijuana. She opined at trial that there was some indication that Rivera might have problems in the area of drug abuse. As reflected in the direct appeal opinion in this case, Dr. Ceros-Livingston also testified in front of the penalty phase jury that Rivera's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired. Rivera, 561 So.2d at 538.[5] The record also reflects that Dr. Ceros-Livingston's expert opinions about Rivera's mental health constituted the only expert opinions presented to the penalty phase jury because the State did not offer its own mental health expert to challenge her findings.
The trial court pointed out in its order that at the original penalty phase, defense counsel presented a "plethora" of mitigating evidence similar to that presented at the postconviction hearing, through Dr. Ceros-Livingston's testimony, and, in addition, the trial court noted, Dr. Ceros-Livingston testified at the evidentiary hearing that even in light of additional information given to her recently, she would not now change her original opinions of Rivera's mental health offered at trial. See Brown v. State, 755 So.2d 616, 636 (Fla.2000) (finding that trial counsel's performance was not deficient for failing to give a mental health expert additional information because the expert testified at the evidentiary hearing that the collateral data would not have changed his testimony); Breedlove v. State, 692 So.2d 874, 877 (Fla.1997) (finding that there was not a reasonable probability that the result of the penalty phase would have been different because the psychologists who testified at the penalty phase stated that additional information, while helpful, did not change their initial opinions). We conclude that the record supports the trial court findings that while perhaps not presented in the same detail, defense counsel did present substantial evidence of mitigation at the original penalty phase.
We further find no error in the trial court's denial of relief as it relates to Rivera's sub-claim that trial counsel should have put on evidence that he was under the influence of cocaine at the time of the murder. At the evidentiary hearing expert witness Dr. Faye Sultan, a clinical psychologist with a specialty in sexual child abuse and disorder, testified that she thought Rivera was under the influence of cocaine and other drugs at the time of the murder in this case. In addition, expert *504 witness Dr. Milton Burglass, a psychiatrist with a specialty in addictive disorders, testified at the evidentiary hearing that someone who experiences withdrawal symptoms from cocaine would go into what is very much like a depressive state. In Dr. Burglass's opinion, Rivera's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired due to his cocaine use. Dr. Burglass further stated that cocaine use would have increased Rivera's already deviant sexual behaviors. However, in rejecting this claim, the trial court held "the fact that defense counsel has found experts that can offer more favorable testimony twelve years later does not establish a basis for relief nor does it establish that the presentation was deficient." As noted above, Dr. Ceros-Livingston testified as to the existence of the "substantially impaired" mitigator at the penalty phase.
This Court has held that counsel's reasonable mental health investigation and presentation of evidence is not rendered incompetent "merely because the defendant has now secured the testimony of a more favorable mental health expert." Asay v. State, 769 So.2d 974, 986 (Fla. 2000). We note that Dr. Sultan and Dr. Burglass relied heavily upon and concurred largely with Dr. Ceros-Livingston's initial report and evaluation presented at trial.[6] Not only were both experts' opinions largely consistent with Dr. Ceros-Livingston's penalty phase testimony, but it is important to note that Dr. Ceros-Livingston's testimony at the penalty phase explicitly supported the statutory mitigator that at the time of the murder he had a substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. See Rivera, 561 So.2d at 538.
Additionally, the evidentiary hearing record supports the trial court's finding that the lay witness testimony offered at the evidentiary hearing actually failed to support the defense theory now asserted that Rivera was under the influence of drugs at the time of the murder. None of the witnesses were able to testify as to his condition at the time of the crime. We also agree with the trial court's denial of this claim because the claim appears to represent a second-guessing and hindsight view of defense counsel's presentation of penalty phase evidence. See Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995) (stating that "[t]he standard is not how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result"). The trial court pointed out in its order denying postconviction relief that Rivera has consistently maintained his innocence in this casea position that largely contradicts Dr. Sultan's and Dr. Burglass's expert *505 opinions that he committed the crime but was under the influence of drugs at the time.
CHILDHOOD TRAUMA, DEVELOPMENTAL AGE, AND LACK OF DRUG OR ALCOHOL TREATMENT PROGRAM
At the evidentiary hearing, the defense presented testimony of Rivera's childhood trauma, developmental age, and his failure to receive drug or alcohol treatment earlier in his life. Rivera argues that trial counsel should have presented evidence of these three aspects of his life during the penalty phase in support of nonstatutory mitigation. First, regarding childhood trauma, Danny Franklin, Andy Ramos, and Dr. Sultan testified at the evidentiary hearing about Rivera's sometimes tense relationship with his alcohol-using father. Second, Dr. Sultan testified that Rivera's developmental age may have been younger than his actual age at the time of the murder because she observed him demonstrate impulsivity, emotionality, and a lack of good judgment. Third, Dr. Sultan testified that apparently Rivera never had the benefit of any drug or alcohol treatment.
In its order denying relief, the trial court concluded that prejudice had not been established on this claim, and that "[e]ven if this `additional' information had been available during the penalty phase, there is no reasonable probability that the balancing of the aggravating factors and mitigating factors would have resulted in a life sentence. The aggravating factors would still far outweigh the mitigation presented." Hence, the trial court concluded that this particular evidence of mitigation was not of such significance as to make a meaningful difference in this case. The trial court noted that although this Court struck the CCP aggravator in this case on direct appeal, several important and weighty aggravators still remain, including prior violent felony, murder committed during commission of an enumerated felony, and HAC.
In Tompkins v. Dugger, 549 So.2d 1370, 1373 (Fla.1989), the defendant claimed that trial counsel was ineffective for failing to present mitigating evidence including his abusive childhood and an addiction to drugs and alcohol. This Court agreed that counsel had been deficient, but agreed with the trial court's finding that in light of the three aggravators (prior violent felony, murder committed during commission of a sexual battery, and HAC), that "this evidence would not have affected the penalty in light of the crime and the nature of the aggravating circumstances." Id. Similarly, in Breedlove v. State, 692 So.2d 874, 877 (Fla.1997), the defendant alleged that trial counsel should have elicited more mitigating testimony from lay witnesses. This Court held that even if that testimony had been presented, the aggravators of HAC, commission during a felony, and prior violent felonies would have "overwhelm[ed] potential mitigating factors presented by witnesses." Id. at 878.
We find no error in the trial court's conclusion that the remaining aggravators in this case would have overwhelmed the evidence of Rivera's childhood trauma, developmental age, and his failure to receive drug or alcohol treatment. This issue must also be evaluated in the context of Dr. Ceros-Livingston presenting detailed evidence of defendant's troubled background. Because this case involves a brutal abduction, rape, and child-murder involving strong aggravators that would not have been significantly impacted by the weight of the proposed nonstatutory mitigation, the trial court concluded that prejudice had not been sufficiently demonstrated under this portion of his IAC *506 claim. In other words, the trial court concluded that Rivera failed to show that the additional evidence regarding his childhood trauma, developmental age, and failure to receive drug or alcohol treatment was sufficient to undermine confidence in the outcome of his original penalty phase proceeding. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. We find no error in this conclusion.

TRIAL COURT'S EVIDENTIARY RULINGS
Rivera also challenges five of the trial court's rulings on evidentiary matters during the postconviction evidentiary hearing.
First, Rivera alleges that the trial court erred when during the direct examination of witness Mark Peters, the trial court did not permit defense counsel to establish Peters' availability as a penalty phase witness at the time of trial. In this Court's first 3.851 opinion in this case, we considered Rivera's IAC claim regarding Peters as a potential alibi witness and his testimony being possibly newly discovered evidence as it related to Brady v. Maryland.[7]See Rivera, 717 So.2d at 482-83. In our previous opinion we stated: "Peters left Orlando after giving his information to both the police and Rivera's counsel, Edward Malavenda. He testified at the evidentiary hearing that he did not tell the police he was leaving and did not remember telling Malavenda he was leaving." Id. at 482. Thus, the trial court did not abuse its discretion in sustaining the State's objection to the defense's question about Peters' contact with trial counsel in this case, because Peters' unavailability had already been established and reviewed in this case. Additionally, Rivera has not sufficiently articulated a reason that Peters' availability should be relitigated in view of our prior treatment of the issue and our limited remand.
Second, Rivera claims that the trial court erred when it refused to consider that two of his prior violent felony convictions had been vacated. Rivera argues that the reversals were relevant to a prejudice analysis because at the penalty phase, the State presented evidence that Rivera was convicted of four separate convictions and, therefore, those convictions affected the weight of the prior conviction aggravator. However, this issue is procedurally barred as this Court already considered it in the first 3.851 opinion. We held: "Despite the reversal of two of Rivera's prior violent felony convictions, he still has three other prior violent felony convictions which support this aggravator, thus precluding resort to the Supreme Court's decision in Johnson [v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988)] as a basis for relief." Rivera, 717 So.2d at 486. Therefore, we find that the trial court did not abuse its discretion in sustaining the State's objection to the defense's attempted relitigation of the vacated convictions.
Third, Rivera claims that the trial court erroneously sustained the State's hearsay objection to witness Peter Rivera's answer to one of the defense's questions on direct examination. At the evidentiary hearing, the following exchange was made:
[RIVERA'S COUNSEL]: And at some point you know that the other boys stopped going to Bob Donovan as well?
[PETER RIVERA]: Yea. And it pertained to what they had said
*507 [STATE]: Objection, hearsay.
The record reflects that the trial court's ruling on the matter was based on relevancy. Therefore, we find no error in the trial court sustaining an objection to the witness's answer. While the fact that the witness knew that other boys stopped seeing Donovan appears appropriate testimony, as it reflects his personal knowledge of the matter under section 90.604, Florida Statutes (2001), his continued statement on "what they had said" was simply nonresponsive to defense counsel's question. Further, the additional statement was not claimed to prove or disprove a material fact. See § 90.401, Fla. Stat. (2001). Because the statement was nonresponsive to the question and not relevant to the proceedings, we find that the trial court did not abuse its discretion in sustaining the State's objection.
Fourth, Rivera claims that the trial court erroneously sustained the State's relevance objection when defense counsel asked witness Miriam Rivera about her own crack cocaine use and what she thought Rivera would have been going through.[8] Upon the State's objection, the trial court asked defense counsel if she intended to qualify Miriam as an expert on substance abuse and on the effects of cocaine. Counsel answered in the negative, whereupon the trial court sustained the objection.
The record reflects that the State's objection to the defense's questioning of Miriam Rivera about her personal drug use was tantamount to an objection based either on speculation or on relevance. Either way, it appears the trial court correctly sustained the objection. First, Miriam's testimony about what Rivera was experiencing would not have been based on her own personal knowledge. See § 90.604, Fla. Stat. (2001). Second, testimony about Miriam's own drug abuse would not prove or disprove a material fact as to Rivera's drug use. See § 90.401, Fla. Stat. (2001). Because the line of questioning regarding Miriam's own drug use was not relevant and because she was apparently being asked to speculate on another person's drug use experience, we find that the trial court did not abuse its discretion in sustaining the State's objection.
Fifth, Rivera claims that the trial court erroneously sustained the State's speculation objection when defense counsel asked trial counsel: "Are you now saying then that in your opinion just nothing would have mattered in this case as to what you presented during the penalty phase?" After the State made what was tantamount to a speculation objection and the trial court asked Rivera's counsel to rephrase the question, counsel asked: "In your legal opinion that no matter what you *508 presented to the jury [sic], it would have not helped Michael?" Again, the State raised an objection, stating that the question did not ask for a legal opinion. The trial court sustained the objection. Counsel then took the opportunity to rephrase the question and to ask it properly, when, after the State had twice objected to the wording of the aforementioned questions, counsel asked: "You stated before that a few things about your theory [sic]. Would it have helped you to have presented more evidence? Would it have helped Michael to present more evidence in your opinion?" The State did not object to this question or its answer.
The record reflects that initially, this line of questioning involved the witness's speculation about what a jury might find, instead of what he, as an attorney, would consider helpful to the defense. We find the trial court did not abuse its discretion in sustaining the objection because trial counsel could not have had personal knowledge of what other evidence would have made a difference to the jury in this case. See § 90.604, Fla. Stat. (2001). However, the record also reflects that defense counsel rephrased the question when inquiring about trial counsel's legal opinion about the penalty phase evidence and this subsequent questioning cured any alleged prejudice.

HABEAS CORPUS
In the petition for writ of habeas corpus, Rivera alleges that (1) his death sentence violates the Sixth and Fourteenth Amendments of the U.S. Constitution, pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and (2) appellate counsel was ineffective for failing to raise numerous issues on appeal.
First, we address Rivera's claim that his death sentence should be invalidated due to the United Supreme Court's decision in Ring. Rivera asserts that Florida's capital sentencing scheme violates the United States Constitution under the holding of Ring. This Court addressed similar contentions in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and, while there was no single majority view expressed, we denied relief. We have since rejected numerous similar claims and find that Rivera is likewise not entitled to relief on this claim. See, e.g., Chandler v. State, 848 So.2d 1031 (Fla.2003); Grim v. State, 841 So.2d 455 (Fla.2003); Lawrence v. State, 846 So.2d 440 (Fla.2003); Banks v. State, 842 So.2d 788 (Fla.2003); Lugo v. State, 845 So.2d 74 (Fla.2003); Kormondy v. State, 845 So.2d 41 (Fla.2003); Doorbal v. State, 837 So.2d 940, 963 (Fla.2003), cert. denied, __ U.S. ___, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003); Anderson v. State, 841 So.2d 390 (Fla.2003); Conahan v. State, 844 So.2d 629 (Fla.2003); Lucas v. State, 841 So.2d 380 (Fla.2003); Porter v. Crosby, 840 So.2d 981, 986 (Fla.2003); Spencer v. State, 842 So.2d 52 (Fla.2003); Fotopoulos v. State, 838 So.2d 1122, 1136 (Fla.2002); Bruno v. Moore, 838 So.2d 485, 492 (Fla.2002); Chavez v. State, 832 So.2d 730, 767 (Fla.2002), cert. denied, __ U.S. ___, 123 S.Ct. 2617, 156 L.Ed.2d 637 (2003); Marquard v. State, 850 So.2d 417 (Fla.2002). Additionally, we note that the jury unanimously recommended the death penalty in this case, and the trial court found the aggravating circumstances of previous conviction of a violent felony and commission of the murder in the course of an enumerated felony.
Second, we address Rivera's claim, involving four sub-claims, that appellate counsel was ineffective. The issue of appellate counsel's effectiveness is appropriately *509 raised in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). When evaluating an ineffectiveness claim, this Court must determine the following:
[F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). See also Thompson v. State, 759 So.2d 650, 660 (Fla.2000). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069 (citing Knight v. State, 394 So.2d 997 (Fla.1981)). Each of the four sub-claims is discussed in turn.
First, Rivera alleges that appellate counsel was ineffective for failing to appeal the circuit court's denial of the motion to suppress statements and physical evidence. The record reflects that at the motion to suppress hearing, the State established through its witnesses that police routinely and consistently advised Rivera of his Fifth Amendment rights in this case and that he understood and waived them. In denying Rivera's suppression motion, the trial court stated:
Well, the Court finds that the matters sought to be suppressed were freely and voluntarily made by the defendant after being advised several times of his rights, and the defendant being aware of his rights, and at no timenot seeking to cut off the interrogation.
In fact, the defendant several times seeked deliberately to prolong the interrogation. So the motion to suppress in its entirety is denied.
Regarding the standard of review for motions to suppress, this Court has held:
[A]ppellate courts should continue to accord a presumption of correctness to the trial court's rulings on motions to suppress with regard to the trial court's determination of historical facts, but appellate courts must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution.
Connor v. State, 803 So.2d 598, 608 (Fla. 2001). We reject this claim.
First, the record establishes that the trial court in this case logically found that according to the evidence, Rivera's Fifth Amendment rights were not violated during the police investigation in this case. Second, in his petition, Rivera has not shown how appellate counsel could have effectively argued the motion to suppress according to the aforementioned standard of review. Third, we find no cognizable fundamental error claim herein. This Court has stated that "appellate counsel cannot be deemed ineffective for failing to raise non-meritorious claims on appeal or claims that do not amount to fundamental error." Happ v. Moore, 784 So.2d 1091, 1095 (Fla.2001) (citation omitted). Thus, we deny relief on this sub-claim because the record reflects that Rivera's motion to suppress was without merit and Rivera has not shown that appellate counsel's failure to appeal the motion was of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance. Further, Rivera has not shown that this alleged deficiency compromised the appellate process to such a *510 degree as to undermine confidence in the correctness of the result.
Second, Rivera claims that appellate counsel should have appealed the trial court's error in admitting irrelevant, inflammatory, and unfairly prejudicial photographs at trial. Rivera alleges that presentation of the crime scene and the process of identifying the victim's injuries could have been done with fewer photographs, and certainly without the videotape that was shown to the jury. At trial, defense counsel objected only once during the medical examiner's testimony about the photos, stating that the witness was not the person who took the photographs. The objection was overruled. However, the record in this case reflects that trial counsel did not object to the photos of the victim's dead body (which were introduced during the medical examiner's testimony) as being unfairly prejudicial. This Court has stated: "We have consistently held that appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object." Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1996). Further, the admission of the pictures did not involve fundamental error because the photographs were used during the medical examiner's testimony to help explain the nature of the victim's injuries and the cause of her death. See Larkins v. State, 655 So.2d 95, 98 (Fla.1995) (noting that this Court has upheld the admissibility of photographs where they were relevant to "explain a medical examiner's testimony, to show the manner of death, the location of wounds, and the identity of the victim"). Because the issue of the allegedly prejudicial photographs was not preserved for appeal, and because the issue did not involve fundamental error, appellate counsel cannot be found ineffective for failing to raise the claim.
Although trial counsel did not preserve a prejudice objection to the photographs in evidence, the record reflects that he did object to a video of the crime scene being shown to the jury. Trial counsel basically objected to the video being cumulative evidence (because of its similarity to the photos), and asked for a Richardson[9] hearing because the State did not provide the defense with the video during discovery. Trial counsel made a motion for mistrial, which was denied. Rivera does not articulate in his petition how or why the videotape footage was unfairly prejudicial and admits that the video footage was similar to the photos in evidence, to which he did not object. This Court has stated: "Most successful appellate counsel agree that from a tactical standpoint it is more advantageous to raise only the strongest points on appeal and that the assertion of every conceivable argument often has the effect of diluting the impact of the stronger points." Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989). Thus, we conclude counsel's failure to appeal the admission of the photographs and videotape was not of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance. This Court has held: "The test for admissibility of photographic evidence is relevancy rather than necessity." Pope v. State, 679 So.2d 710, 713 (Fla.1996). See also Provenzano v. Dugger, 561 So.2d 541, 549 (Fla.1990) ("Photographs must only be excluded *511 when they demonstrate something so shocking that the risk of prejudice outweighs its relevancy."). Further, even assuming the video footage was not relevant, we conclude that any error was harmless. See Almeida v. State, 748 So.2d 922, 930 (Fla.1999) (finding admission of irrelevant autopsy photo harmless "in light of the minor role the photo played in the State's case"); Thompson v. State, 619 So.2d 261, 266 (Fla.1993) (finding error in admission of irrelevant autopsy photographs harmless "given the testimony of the eyewitness, the medical examiner, and the appellant himself, and the other photographs admitted into evidence").
Thus, we conclude that appellate counsel was not ineffective for failing to appeal the unpreserved issue of the admission of photographs in this case. Additionally, we find that appellate counsel's failure to appeal the videotape issue did not compromise the appellate process to such a degree as to undermine confidence in the correctness of the result.
Third, Rivera claims that appellate counsel was ineffective for failing to appeal the denial of his motion for change of venue. This Court has defined the defendant's burden to merit a change of venue as follows: "[T]he defendant must show inherent prejudice in the trial setting or facts which permit an inference of actual prejudice from the jury selection process...." McCaskill v. State, 344 So.2d 1276, 1278 (Fla.1977). The standard of review for a trial court's failure to grant a motion for change of venue is the abuse of discretion standard. See Davis v. State, 461 So.2d 67, 69 (Fla.1984) ("An application for change of venue is addressed to a trial court's sound discretion, and a trial court's ruling will not be reversed absent a palpable abuse of discretion."). Importantly, Rivera has not claimed that the composition of his actual jury prejudiced him to the point of not receiving a fair trial. See Suarez v. Dugger, 527 So.2d 190, 193 (Fla.1988) (denying relief on habeas claim of ineffective appellate counsel for failure to appeal denial of motion for change of venue because "[t]here is no claim that the jury, as constituted, did not accord Suarez a fair and reliable trial"). Because Rivera fails to plead in the petition how the denial of his change of venue motion established "actual prejudice" and how appellate counsel could have successfully argued that the trial court abused its discretion, we find that Rivera has not shown how appellate counsel's failure to appeal the denial of the change of venue motion was of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and that it compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Fourth, Rivera claims that appellate counsel was ineffective for failing to appeal the trial court's denial of his motion for mistrial and the corresponding request to question the jurors regarding improper juror conduct. The record reflects that at two points during the trial, Rivera indicated to his attorney that he heard a juror make a comment to the effect of: "I think he did it." On both occasions, trial counsel brought the comment to the attention of the trial court. Although no one else in the courtroom could identify which juror made a comment or exactly what was said, the trial judge on both occasions cautioned the jury to not make comments pertaining to the evidence.[10] Trial counsel moved for *512 a mistrial on the basis that a juror had improperly formed an opinion. The trial judge denied the motion, stating that his two cautionary instructions were sufficient and that a mistrial was not appropriate at that point.
This Court has held that the standard of review of a motion for mistrial is the abuse of discretion standard when it stated:
A ruling on a motion for a mistrial is within the sound discretion of the trial court and should be "granted only when it is necessary to ensure that the defendant receives a fair trial." Gore v. State, 784 So.2d 418, 427 (Fla.2001). The use of a harmless error analysis under State v. DiGuilio, 491 So.2d 1129 (Fla.1986), is not necessary where "the trial court recognized the error, sustained the objection and gave a curative instruction." Gore, 784 So.2d at 428. Instead, the correct appellate standard of review is abuse of discretion. See id.

Smithers v. State, 826 So.2d 916, 930 (Fla. 2002). We find that the trial court's cautionary instructions in this situation were reasonable and that he did not abuse his discretion by finding that the alleged juror conduct did not meet the standard of warranting a mistrial. Accordingly, appellate counsel cannot be found ineffective for declining to raise this nonmeritorious issue on appeal. See Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989) (acknowledging that appellate counsel often makes a tactical decision to only raise the strongest points on appeal).
Based on the foregoing, we affirm the trial court's denial of 3.851 relief and deny habeas corpus relief.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
ANSTEAD, C.J., concurring in part and dissenting in part.
I fully concur in the majority opinion, except for its discussion of the decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] The facts of the case and our resolution of the issues raised on direct appeal are set out in some detail in our prior opinion. See Rivera v. State, 561 So.2d 536 (Fla.1990).
[2] A prior opinion from this Court in this case reflects that evidence on the following issues was introduced at trial: (2) psychosexual disorder; (4) sexual abuse as a child; (6) a substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law; (9) long-term personality disorder; (15) character testimony from family members; and (18) substantial domination by alternate personality. Rivera, 717 So.2d at 484-85.

The record reflects that evidence of the following, although not discussed in the direct appeal opinion, was in fact admitted during the penalty phase: (3) history of hospitalization for mental disordersDr. Ceros-Livingston testified that Rivera was treated at Florida State Hospital in the sex offender program while serving time in prison and Rivera's mother testified that he went to the sex offender program; (14) drug abuse problem Dr. Ceros-Livingston testified that Rivera had a history of drug usage and possibly had a drug abuse problem; (16) psychotic depression and feelings of rage against himself because of strong pedophilic urgesDr. Ceros-Livingston testified that Rivera had an identity problem in relationship to his sexual behavior and that his behavior was consistent with someone who was anxious and depressed and who would engage in self-damaging acts; (19) artistic abilityLisa Keena, Rivera's former girlfriend, testified that Rivera has artistic abilities and Rivera's mother testified that he is artistic; (20) capable of kindnessPeter Rivera testified that Rivera was very helpful when Peter needed help; (21) family loves himRivera's mother and Rivera's siblings, Elisa, Miriam, and Peter testified that they love him.
[3] At the evidentiary hearing, Rivera made no attempt to present evidence of the following issues: (1) dissociative disorder; (5) expressions of remorse; (10) acceptable behavior at trial; and (13) non-applicability of the aggravators.
[4] The sentencing order in this case was filed on May 1, 1987. In the sentencing order, the trial court stated:

In summary, the Court finds beyond a reasonable doubt that the State has proven four aggravating statutory circumstances and the defense has proven one mitigating statutory circumstance. In addition, the Court finds no nonstatutory mitigating circumstances from the evidence at the trial or the sentencing procedure. It is therefore the opinion of the Court after weighing the aggravating and mitigating circumstances, that there are sufficient aggravating circumstances to justify the sentence of death.
We do not evaluate the trial court's sentencing order regarding its consideration of the mitigating evidence presented in this case pursuant to Campbell v. State, 571 So.2d 415 (Fla.1990), because the trial court's order was issued before this Court decided Campbell. This Court has previously held that our decision in Campbell is to only be applied prospectively. See Gilliam v. State, 582 So.2d 610, 612 (Fla.1991). Campbell, of course, now requires trial courts to elaborate in great detail their consideration of the mitigating evidence presented. Hence, at the time of the trial of this case there was no specific mandate that the trial court refer to all the mitigating material referred to during the penalty phase of the proceedings.
[5] As noted above, the trial court found the statutory mitigator of under the influence of extreme mental or emotional disturbance.
[6] The penalty phase record reflects that Rivera consistently maintained his innocence in this case when he spoke to Dr. Ceros-Livingston. He told her that on the day of the murder he went to a coin shop in the mall, then went to smoke some crack with his brother, then went to a carnival, later went out to buy more crack, and finally went home. Thus, she was without any information regarding Rivera being under the influence of drugs at the time of the murder. Apparently, none of Rivera's other self-reporting indicated to Dr. Ceros-Livingston that he tended to commit crimes while being under the influence of drugs. In fact, Rivera told Dr. Ceros-Livingston that after he molested another girl, (involving an unrelated prior crime), he later went and smoked marijuana. Further, Dr. Ceros-Livingston related that Rivera would not use marijuana before interacting with women because it causes him to lose his train of thought. In its order denying 3.850 relief, the trial court noted, "The defendant continues to claim his innocence to this day. He has not shown remorse for the crime."
[7] 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution").
[8] At the evidentiary hearing, the following exchange was made:

[RIVERA'S COUNSEL]: And based on your own use of the cocaine and the crack, what would that tell you or what did that make you think about what Michael was doing?
[MIRIAM RIVERA]: Well, I myself knew it's a very addictive substance. And just by the way he was acting, I would tell by my own use and what I had seen from another roommate what he was doing and what he was going through.
[RIVERA'S COUNSEL]: And what would you think that he was going through?
[STATE]: Objection.
. . . .
[RIVERA'S COUNSEL]: I'm going to go back for a second just a little bit about the drug use. When you were using crack cocaine, were you still working at the time?
[MIRIAM RIVERA]: Yes.
[RIVERA'S COUNSEL]: Okay. When were you using crack cocaine in
[STATE]: Objection, Your Honor. Same objection, Judge.
[9] Richardson v. State, 246 So.2d 771 (Fla. 1971). In Richardson, this Court said: "The trial court has discretion to determine whether the [State's] non-compliance [with its discovery obligation] would result in harm or prejudice to the defendant, but the court's discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances." Id. at 775.
[10] In his first cautionary instruction, the trial court indicated that he heard "certain matters coming from the jury," but he could not tell what was said or who was speaking. He stated: "They were comments pertaining, I think, to at least I assume that they might be pertaining to testimony." He also described the jury activity as "a back tone" and "some buzzing."